BENJAMIN L. STAPLES, administrator, *vs.* GEORGE B. WELLINGTON.

*Instructions. Exceptions. Temporary hallucination—continuance of, not presumed. Admissibility of evidence—when objections to be stated.*

A party cannot sustain exceptions to an instruction which is more favorable to him than the one which he requested to be given.

Thus, where a requested instruction contained the two propositions, (1) that the assignee of a debt need not notify the debtor of the assignment, and (2) that if notice were given by the assignor or any third person, it would be sufficient to put the debtor upon inquiry to ascertain the fact; and the instruction given

negatived the necessity of notice by the assignee, and affirmed the sufficiency of notice from any reliable source, as withdrawing the right of the debtor to pay the assignor; *Held*, that as a notice, coming from an unreliable source, would not be sufficient to induce inquiry, the instruction given was more favorable to the debtor than the one requested by him, and that he cannot sustain exceptions thereto.

There is no presumption of law as to the continuance of a temporary hallucination or delusion resulting from disease; and a party claiming to avoid a contract by reason thereof, must show its existence at the time of the making of the contract, and that the hallucination was of a character affecting his capacity to make the contract sought to be avoided.

To be available, the grounds of objection to the admissibility of testimony must be stated when it is offered.

A party is not injured by the exclusion of an admissible statement contained in an answer in a deposition, when the same statement in other portions of the deposition is received.

A verdict, founded upon conflicting testimony, will not be set aside as being against the weight of evidence, unless it be flagrantly erroneous.

ON EXCEPTIONS.

ASSUMPSIT on a special contract for the payment of an alleged bounty as a volunteer in the United States army.

At the February term, 1867, the action was tried, and the jury returned a verdict for the plaintiff; whereupon the defendant filed a motion to set aside the verdict, and the action was continued.

On the 6th of May, 1867, the plaintiff's intestate, by his deed, assigned all his right, title, and interest in the verdict, and the claim on which it was founded, to Edmund Madigan, his attorney in the action.

On the 7th of September, 1867, the defendant obtained from the plaintiff's intestate a deed of release of the action, and all claims upon which the same is founded, the consideration of which being, as expressed in the lease, sixty-seven dollars.

At the September term, 1867, the release was presented to the defendant, accompanied by a motion to dismiss the action, the motion to set aside the verdict having been withdrawn. The motion was resisted by Edmund Madigan, the assignee, on the ground of the assignment of May 6th, and also on the ground of the invalidity of the release by reason of the alleged incapacity and unsoundness of mind of Francis G. Brown, the assignor and plaintiff's intestate, on Sept. 7, 1867, the day of its date.

The defendant pleaded the release to the further maintenance of the action; and the plaintiff replied that he ought not to be precluded from having judgment on the verdict in his favor; because, (1) the alleged writing of release was not the deed of said Francis G. Brown; (2) it was obtained by the fraud and circumvention of the defendant, and for a grossly inadequate consideration, by deceit and undue influence; (3) said Brown, at the time of the pretended execution of said alleged writing of release, was not of sound mind, nor legally competent to execute the same; (4) before the time of the pretended execution of said release, the action and all rights accruing therefrom, had, for a valuable consideration, been duly assigned to E. Madigan, of all which the defendant had notice; and (5) heretofore and before the middle of vacation, the said Brown deceased, and afterwards, to wit, on, etc., Benjamin L. Staples was duly appointed and took upon himself the trust of administrator of the estate of said Brown.

The defendant rejoined, substantially, that the release ought to be allowed against the further maintenance of the action, because it was not obtained for an inadequate consideration, nor by any deception or circumvention; that it was not obtained from said Brown when he was of unsound mind and legally incapacitated for the transaction of business; that the defendant had no notice of the assignment, and concluded to the country. The plaintiff joined the issue thus tendered.

At the February term, 1869, the presiding judge presented two issues for the jury to determine :

1. Did the defendant have notice of the assignment before receiving the release ? and

2. Was the release valid or void ?

There was evidence tending to show that the defendant had notice of the assignment to E. Madigan before the execution of the release. There was evidence tending to show the unsoundness of mind or alleged incapacity of Brown, the intestate, to make a binding contract, on Sept. 7, 1867, the date of the release; and there was evidence to the contrary.

The plaintiff introduced the depositions of Robert Brown, Phebe Brown, and William Brown, certain portions of which being objected to were ruled out. These, as well as the remaining facts, sufficiently appear in the opinion.

The jury found that the defendant did not have notice of the assignment before executing the release ; and that the release was valid ; and the plaintiff alleged exceptions, and also filed a motion to set aside the verdict upon the issues as being against the weight of evidence.

*J. Granger & E. Madigan,* for the plaintiff.

Upon the point of excluding the statement, in the depositions, that the plaintiff's intestate's talk the next day, and for a week or more after the pretended execution of the release, had "no sense or reason in it," cited *Commonwealth* v. *Timothy,* 8 Gray, 480.

The requested instruction concerning notice should have been given. *Bridgham* v. *Wentworth,* 11 Cush. 123 ; *Drake* v. *Curtis,* 1 Cush. 414.

Upon the question of notice counsel cited 3 Washb. on Real Prop. 284 ; Best on Presump. 140 ; *Farnsworth* v. *Child,* 4 Mass. 639 ; *Young* v. *Dearborn,* 7 Foster (N. H.), 324 ; *Cameron* v. *Little,* 13 N. H. 26 ; *Davenport* v. *Woodbridge,* 8 Greenl. 18 ; *Anderson* v. *Van Allen,* 12 Johns. 343 ; *Warren* v. *Swett,* 11 Foster (N. H.), 341 ; *Nute* v. *Nute,* 41 N. H. 69 ; *Jordan* v. *Gillen,* 44 N. H. 428 ; *Cooper* v. *Newman,* 45 N. H. 331, 342 ; *Davis* v. *Keyes,* 38 N. Y. 94.

The instruction did not define "reliable source." It is not a term of art, nor does it have a fixed meaning like "reasonable " or "gross," and misled the jury. If the defendant obtained information or notice from·an inmate of a State prison, it should have been left to the jury to say whether he was reasonably put upon inquiry, and ought or ought not to have pursued the inquiry until he ascertained the fact. "Constructive notice exists where the party, by any circumstances whatever, is put upon inquiry." Bouv. L. Dict., Tit. Notice.

Upon the question of Brown's insanity or delusion, the counsel contended that the burden of proof attaches to the party alleging a lucid interval, who must show competence at the period when the act was done and to which the lucid interval refers. *Attorney-general* v. *Paruther*, 3 Bro. Ch. Cas. 441 ; *Sutton* v. *Sadler*, 3 C. B. (N. S.) 94. If derangement or imbecility be proved at any particular period, it is presumed to continue until disproved, unless caused by the violence of a disease. 1 Greenl. on Ev., § 42 ; Swinburne on Wills, 65.

Counsel also cited, on the point of presumption of continuance of insanity, Williams' Exrs. 19 ; *Jackson* v. *Van Dusen*, 5 Johns. 159 ; 1 Redf. on Wills, 47–92 ; 2 Greenl. on Ev., § 689 ; *Haviland* v. *Haynes*, 37 N. Y. 28 ; *Woodbury* v. *Obear*, 7 Gray, 467.

The court should have clearly discriminated between the presumption attending general insanity and that of temporary. The instruction given makes a distinction between insanity and unsoundness of mind, when the term includes all derangements of mind. Taylor's Med. Jur. 625. The distinction should have been made by the instruction, and left to the jury to find whether it came within one or the other. Otherwise the tendency was to mislead.

The instruction given, though correct as an abstract principle of law, yet for want of a qualification which would have made the present case an exception, was incorrect in its application. *Pond* v. *Williams*, 1 Gray, 635 ; *Mansfield* v. *Corbin*, 2 Cush. 152 ; *Farnum* v. *Davidson*, 3 Cush. 234. "Hallucination" has not received a technical meaning in law like "lunacy." See Worcester's Dict. Delirium, one form of insanity, may be temporary or permanent. When proved, he who would show it has ceased, must show it was temporary, accidental, or arose from causes which no longer exist. See *Hix* v. *Whittemore*, 4 Met. 545. Counsel also cited *Halley* v. *Webster*, 21 Maine, 461.

*J. C. Madigan & Donworth*, for the defendant.

APPLETON, C. J. This suit is prosecuted for the benefit of Edward Madigan, to whom the original plaintiff assigned, on 6th May,

1867, the demand in suit. The defense rests upon a release executed on 7th Sept., 1867, by plaintiff's intestate.

The validity of the release was contested on the ground, 1st, that the defendant had notice when he received it, that the demand released had previously been assigned; and, 2d, that the releasor was not of sound mind when it was given.

1. The presiding judge was requested to instruct the jury "that it was not necessary that the notice of the assignment should be given by the assignee; if the defendant had notice from the assignor, or from any third person, of the existence of such assignment, it would be sufficient to put the defendant upon inquiry to ascertain the particulars of the fact, and if the defendant neglected to do so, he had no right to deal with the assignor for a release of the claim, and the release would be invalid." This instruction was not given any further than is contained in the following words:

"It is the duty of the assignee, taking an assignment of a debt or claim, to notify the debtor, and if he does this, the right of the debtor to deal with the assignor is withdrawn, and he has no longer any authority to pay the assignor or take any discharge from him. The notice, to have this effect, need not come from the assignee, if the debtor had notice from any other reliable source, he is equally bound by it."

The request contains two propositions,—1st, that it was not necessary that notice should be given by the assignee; 2d, that if notice was given by the assignor or any third person, it would be sufficient to put the defendant upon inquiry to ascertain the fact, and if he neglected, he dealt with the assignor at his peril.

But the instruction given was more favorable to the assignee than the one requested. It negatived the necessity of notice by him. It affirmed the sufficiency of notice from any reliable source, as withdrawing the right of the debtor any longer to deal with the assignor or take a release from him. It was not that the notice was sufficient to induce inquiry on the part of the debtor, as was assumed by the request, but that it was sufficient in and of itself to render a release after such notice of any avail.

It is true, the notice referred to must come from a reliable source. But if it came from an unreliable, it would not be sufficient to induce inquiry. If the information comes from a source unreliable, it will not suffice to induce action ; for it will hardly be pretended that the sufficient credit should be given to what is unreliable, to require the same course of conduct which would be the legitimate result of information upon which reliance could be placed.

It is obvious that the instruction, whether right or not, is more favorable to the assignee than the one requested.

2. The presiding judge was also requested to instruct the jury, " that when a party, executing a contract, has been shown to be of unsound mind before its execution, the burden of proof is on the party claiming under the contract to show soundness of mind at the time of its execution."

The instruction given was as follows : " that it was only in a case of insanity, which changed the burden of proof, and that temporary hallucination of mind would not so change the burden."

The request given assumes and affirms the correctness of the request as made. The only inquiry is whether the additional remark was erroneous and prejudicial to the plaintiff in interest.

The qualification as to hallucination, whether correct or not, depends on the meaning of the term. Now hallucination is not *per se* insanity. It does not necessarily avoid a contract. It may exist as to matters in no way affecting the capacity to contract. The medical definition of hallucination adopted by Worcester is, a " morbid error in one or more of the senses ; a perception of objects which do not, in fact, make any impression upon the external senses ; delirium, delusion." The state of mind indicated by hallucination is strikingly illustrated by the remarkable story of Nicolai, the Berlin bookseller, who, for a length of time, was visited at his bedside by individual forms that were visible to his sight and addressed him. During all this period he was conscious that it was a delusion. Still he transacted his ordinary business with his usual ability, and his contracts were as valid as if the delusion had not existed.

If the delusion or the delirium is that caused by disease, it is

obviously temporary in its character.   It will continue only during the continuance of the fever in which it originated.   If a fever is shown to exist at a given date, the law does not presume its continuance as in the case of fixed insanity.   So there is no presumption of law as to the continuance of the temporary hallucination or delusion resulting from disease.   The party claiming to avoid a contract, by reason of temporary hallucination or delusion, must show its existence at the time of the contract sought to be avoided for such cause, and that it was of a character affecting his capacity to make the contract sought to be avoided.

It is undoubtedly true, that when an hallucination has become permanent, it is to be deemed insanity, general or particular according to the nature of the delusion under which the patient labors. But the instruction excluded, from the consideration of the jury, a case of permanent and fixed hallucination, and referred only to an hallucination temporary in its nature, and which would terminate, or might be expected to terminate, with the termination of its exciting cause.

3.  The only objections specifically taken to the testimony of Burns, Fitzherbert, and Hayden was that of irrelevancy.   But that objection is not sustainable.   The counsel now rely on particular sentences in their testimony, to which specific objections do not appear to have been taken at the time.   The general objection fails, because the testimony was relevant.   The particular objection was not taken when, had it been, the testimony to which it applies might have been excluded.   The grounds of objection should be stated at the time.   If well taken, they will avail the party.   After the trial, it is too late to take the objection.

4.  In the deposition of Robert Brown, the remark, " there was no sense or reason in anything he said that day," was stricken out of the deposition.   But the preceding part of the sentence, " he kept talking all Sunday, talking foolish talk all the time," was read to the jury as well as the next sentence, " the reason why I cannot recollect any thing Francis said that Sunday is because there was no sense or reason in what he said."

In another part of the deposition this sentence was stricken out: "the general way that he was in from the time he came to my place until he died was flighty, and no sense or reason in him." But these statements appear in the deposition, "I could get no sense or reason in what he said, and that is the reason why I cannot remember. I meant to say I could find no sense or reason in what he said," etc.

It is apparent that the exclusion could not have injured the plaintiff, if the portions excluded were admissible, inasmuch as the same statements from this witness were received and permitted to be read to the jury.

5. This case, according to the report before us, had been tried once before, and with the result of disagreement. There was evidence on both sides, and in the conflict of proof, the law devolves on the jury the duty and responsibility of determining where the truth may be. The jury, with better means of judging than we can have, for they saw and heard the witnesses, have arrived at a result which they deemed in accordance with the preponderance of testimony, and there is no such flagrant error in their verdict as will justify us in setting it aside.

*Motion and exceptions overruled.*

CUTTING, KENT, WALTON, and DANFORTH, JJ., concurred.