ELMER SEARLE

*v.*

JAMES G. GALBRAITH.

73   269
121   50
73   269
153   202
73   269
180   168

1.  JURISDICTION—*can not be questioned in collateral proceeding.* When the record shows, or the court finds, the jurisdictional facts, the record can not be contradicted or questioned in a collateral proceeding.

2.  Where a decree recited that the court found that the county court had appointed a conservator for the defendant, and that the latter had been ascertained by a jury, according to the form of the statute, to be an insane person, it was *held,* that he could not be allowed to contradict the finding of the decree, so far as it related to the appointment of a conservator.

3.  INSANITY—*does not necessarily avoid business transaction.* It is well understood, that in many forms of insanity the capacity to transact business is entirely unaffected, and in such cases the fact of insanity can not be set up to avoid business transactions.

4.  Where an insane person received the benefit of all the purchase money received from a sale made by his conservator, and it appeared that at the time of receiving it he had sufficient capacity to transact business intelligently, and that he comprehended what had been done, it was *held,* that he was estopped from afterwards denying the validity of such sale.

APPEAL from the Circuit Court of Whiteside county; the Hon. WILLIAM W. HEATON, Judge, presiding.

Messrs. EUSTACE, BARGE & DIXON, for the appellant.

Messrs SACKETT & BENNETT, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

At the May term, 1866, of the Whiteside circuit court, Henry R. Sampson obtained a decree, as the conservator of appellant, authorizing him to sell and convey certain lands, including those in controversy, for the purpose of paying appellant's debts.

Pursuant to this decree, on the 18th of August, 1866, Sampson sold the land to one Wilson, who purchased it for appellee. In executing the deed to Wilson, however, Sampson omitted to affix a scroll or seal after his signature. Subsequently Wilson conveyed to appellee, who went into possession, and appellant brought ejectment to the October term, 1867, of the Whiteside circuit court, against him for the land. Trial was had, resulting in a judgment for appellant; and, on motion of appellee, the judgment was set aside and a new trial ordered, by virtue of the provision to that effect in the act relating to ejectment. Pending the second trial the present bill was filed in the same court, praying that the proceedings in ejectment be enjoined, and that Sampson be required to make and deliver a deed in conformity with the decree and sale.

It is recited in the decree, that the case was referred to Henry Hudson, Esq., a special master in chancery, to take and report the evidence; and his report thereof is received and approved. It then proceeds in these words: "And the court, upon the examination of said report, does find therefrom that the said Henry R. Sampson has been appointed as conservator of the estate of Elmer Searle, who this court finds has been ascertained by a jury, according to the form of the statute in such case made and provided, to be an insane person," etc.

On the hearing below, appellant gave evidence tending to show that he was not served with notice of the proceedings taken in the county court declaring him insane; and the ques-

tion is, whether he can be allowed to contradict the findings of
the decree, so far as it relates to the appointment of Sampson
as his conservator. There is no charge or proof of actual fraud
in the matter. The land sold for about what it was worth;
and it is conceded that appellant was in fact insane; that he
was sent to the lunatic asylum at Jacksonville, and Sampson
was attempted to be appointed his conservator, by order of the
county court.

The counsel for appellant cites numerous authorities, which
we have carefully examined but deem it unnecessary to refer
to, in support of the position, that, however conclusive the
record of a court may be in other respects, the question of its
jurisdiction is always open to investigation. We do not re-
gard the question as an open one with us, and shall therefore
refer to but few authorities.

In *Fitzgibbon* v. *Lake*, 29 Ill. 165, the record of a guar-
dian's sale was offered in evidence, by the defendant in an
action of ejectment. It was argued by the counsel for the
appellants, who were plaintiffs in the lower court, that there
were two testamentary guardians appointed, whereas the re-
cord showed but one acting. The court said : "The next ob-
jection is, that the petitioner could not, alone, without joining
the other guardian named in the will, properly institute that
proceeding. Whether the petitioner was the guardian, and
had authority to institute the proceeding, was for that court to
determine when it heard the petition. It decided he was by
granting the order, and we can not reverse that decision here."

*Goudy* v. *Hall*, 30 Ill. 109, and subsequent cases of like
character, only hold that the finding of the court on the ques-
tion of jurisdiction is not conclusive, where the record itself
shows it is not true.

The distinction between the two classes of cases is clearly
pointed out in *Osgood* v. *Blackmore*, 59 Ill. 265. It is there
said: "And where the record shows, or the court finds, the
jurisdictional fact, the record can not be contradicted or ques-
tioned in a collateral proceeding.

"It is true, that if, by an inspection of the whole record, it is seen that there could not have been jurisdiction of the person, then the *prima facie* case would be overcome. But where the court has adjudged there was jurisdiction of the person, we can not look beyond the record, or receive evidence outside of it, to disprove the finding. In this respect the question can alone be tried by the record."

The evidence shows that appellant, who had then been discharged from the asylum, was cognizant of the sale, and that, on the afternoon of the same day, by his direction, $300 of the purchase money was paid to a third party to whom he was indebted; that at another time, $260 of the purchase money was paid directly to him; and that he has received, as before observed, the benefit of all the purchase money. While there is evidence showing that when the sale occurred, and subsequently, appellant was insane, the clear preponderance of the evidence is, that his insanity did not then affect his capacity to transact business. Dr. McFarland, of the insane asylum at Jacksonville, testifies that he was informally discharged from the Asylum on the 7th of July, 1864, and that he regarded him as then insane; that he saw him once, sometime after his discharge, and he discovered no change in him. He does not say how the insanity affected him, or whether it impaired his capacity to transact business. Mr. Johnson, an attorney, testifies he was insane, at the time of the sale and subsequently, but that in conversations with him about the sale, he seemed to comprehend what had been done, and who did it. Sampson, the conservator, Boyd, and Wilson, who were all well acquainted with appellant, testify that at the time of the sale, and subsequently, he had sufficient capacity to transact business intelligently.

We perceive, therefore, no reason why a different rule should be applied to his conduct in accepting the proceeds of the sale, than if he had never been affected with insanity. It is well understood that in many forms of insanity, the capacity to transact business is entirely unaffected, and in such cases it

has never been held that the fact of insanity could be set up to avoid business transactions.

That a person who knowingly and deliberately accepts the proceeds of a sale, when he is laboring under no legal disability, is thereafter estopped from denying its validity, has been so often declared by this court that it needs no further discussion.

We perceive no error in the record, and the decree is, therefore, affirmed.

*Decree affirmed.*