EUROPE A. LILLY, Appellant, v. GEORGE WAGGONER, Conservator of Elisha Waggoner, Appellee.

APPEAL FROM MOULTRIE.

A contract entered into during the lucid intervals of one who is a lunatic, is valid.

All persons of mature age are presumed to be sane, until after inquest found, when the presumption is changed, and proof is required to show sanity.

A deed executed several years before the maker was, by inquest, found insane, has the legal presumption of validity in its favor.

The evidence showing the insanity of a party at the time of the execution of a deed, must preponderate, or the legal presumption in favor of sanity, will sustain the act.

THIS suit was commenced by bill in chancery in the Circuit Court of Moultrie county, at the October term, 1858, by George Waggoner, as conservator of the estate of Elisha Waggoner, for the purpose of setting aside a conveyance of real estate made by said Elisha Waggoner to the appellant, Lilly, in the year 1851, upon the ground that said Elisha was insane at the time of selling and conveying the property.

The bill alleges, that, in 1858, an inquest was held upon said Elisha Waggoner, at the county of Moultrie, by order of the judge of the County Court, and a verdict of insanity rendered. That afterwards, on the 6th of September, 1858, George Waggoner was appointed by the County Court, conservator of the estate of Elisha Waggoner; that for a long period previous to the inquest, said Elisha was insane, and that during such insanity he conveyed the land described in the bill to the appellant, Lilly; that the said Lilly has not yet divested himself of the fee in said land; that Lilly knew of the insanity of said Elisha at the time of the conveyance; that said conservator proposed, out of his own means, to give Lilly the amount to be paid for the land, if he, Lilly, would reconvey the land to Elisha, which Lilly has refused to do. Bill prays that the conveyance may be set aside, and an account of rents and profits be taken, etc.

The answer of Lilly admits the conveyance, and alleges that a full consideration was paid for the land; that he, Lilly,

is in possession of the land, and has made valuable improvements on it; that the land has greatly increased in value since the conveyance to him by said Elisha, and that great injustice would be done to him by canceling the conveyance; that said Elisha was not insane at the time of making the conveyance, but legally competent to make it; denies that appellee offered to give him the amount he paid for the land; that appellee is the brother of said Elisha, and must have known of the conveyance; but no objection was made to it until several years after; that the purchase of said land was made by him in good faith.

To this answer there is a replication.

The case was, by consent, tried by the court upon the bill, answer, replication, exhibits, and oral proof. The testimony is summarily stated in the opinion of the court.

At the September term, 1859, of the Moultrie Circuit Court, the judge entered a decree declaring the deed from Waggoner to Lilly void, and ordering a reconveyance of the land to Waggoner; and that the purchase money be refunded to Lilly with interest. To which decree exceptions were taken. Motion for a new trial, and motion overruled. Exceptions taken, and appeal prayed.

The errors assigned are as follows : Court erred in rendering the decree in favor of the appellee; and in not rendering decree for appellant, and dismissing bill of complainant.

A. Thornton, and Stuart, Edwards & Brown, for Appellant.

W. H. Herndon, and H. P. H. Bromwell, for Appellee.

Walker, J. Does the evidence in this case establish the fact, that Elisha Waggoner was of non-sane mind, so as to avoid his conveyance to appellant? It may be truly said, that there are few questions which present greater difficulties in their solution, than this of insanity. It assumes such a variety of forms, from that of the raving madman, to the monomaniac; from total dementia, to that of scarcely perceptible insanity, that it has almost been denied, that any person is perfectly sane, on every subject. But the law only regards it, when it renders the subject *non compos mentis,* or that condition of the mental faculties exists, which renders the subject incapable of acting rationally in the ordinary affairs of life. It is that degree of mental derangement which renders the person affected incapable of understanding the effect and consequences of his acts. It need not be of that total derange-

ment, or rather obliteration of the faculties, which prevents the party from reasoning upon all subjects. Nor yet the want of power, at all times, upon correct premises, to arrive at accurate conclusions, but it is that want of power, which prevents a person from reasoning, or understanding the relation of cause and effect.

Persons of equal natural mental capacity, from difference in education, pursuits and opportunity, manifest different degrees of mental vigor. The law has never required the high order of reasoning powers that mark the gifted, or a large portion of the human family would be thus deprived of the legal capacity to transact their own business. But if the person manifest an ordinary degree of intelligence and judgment or even less, in reference to his business pursuits, and especially upon the subject in dispute, at the time of the transaction, it is all that is required.

A person may be a lunatic and yet have lucid intervals. And the law has at all times held, that a contract entered into, during a lucid period, is valid, whilst those made during a fit of insanity may be avoided. The reason is obvious, as a contract to be binding, must receive the assent of the parties. Not the mere formal assent, but the agreement of a mind capable of comprehending the nature of the transaction. Where one of the parties is *non compos mentis*, he has not entered into the agreement, because his mind has not comprehended the nature of the transaction, or the effect of his act. He lacks the mental capacity to understandingly give his assent to the transaction, whilst in the lucid interval, his mind acting with judgment, has understood the force and effect of his act.

Then does this evidence show, that this individual was insane, or if so, that the conveyance was made when he was laboring under its effects? The legal presumption is, that all persons of mature age are of sane memory. But after inquest found, the presumption is reversed, until it is rebutted, by evidence that he has become sane. When the transaction complained of occurred before the inquest is had, the proof of insanity devolves upon the party alleging it, but it is otherwise if it took place afterwards. In this case the conveyance was executed several years previous to the inquest, and the legal presumption is, that the deed is valid unless the proof establishes insanity at the time of its execution. Complainant's evidence is somewhat conflicting. But five or six of his witnesses speak of the grantor insisting that he was dead, was going to die, was dying, or that a change in his manner was perceptible after his sickness. Some of these wit-

nesses, however, say, that he conversed rationally on his business affairs, and none of them say that he did otherwise. One of these witnesses purchased of him a tract of land, and says that he fixed the prices of property at near its value. None of these witnesses say, that it was his habit of insisting upon the absurdities of which they testify, or whether it was only occasionally, or when they occurred. Whether it was during his sickness, or near the time of the sale, or some years later, is not disclosed by the evidence.

Again, one of the complainant's witnesses was present when the sale was made. He says, that appellant offered Waggoner four dollars per acre, which he agreed to take; that Waggoner's wife was present at the time, and made no objection; that witness had been acquainted with Waggoner several years; had conversed with him occasionally, but had never heard him speak of going to die. One of the physicians, who was examined, states that, from complainant's evidence, he thinks it difficult to tell whether Waggoner was sane or insane. That it discloses some marks of insanity, and if there was a cause for it, that there is some evidence showing simulated insanity, and that some of the tests of insanity are wanting. The other physician gives it, as his opinion, that he was insane, but that it was of the character, that in some cases the person affected would be capable, and in others incapable, of attending to his business.

Neither of these witnesses, however, give the opinion, that the grantor was so affected by insanity, as to be incapable of conducting his business. One of them speaks of some marks of insanity, whilst others are wanting, but thinks it difficult to determine the question. The other, whilst he thinks him insane, regards the insanity as of that character which in some cases renders a person incapable of transacting business, but abstains from giving an opinion as to the capacity of this person to transact business. Again, the justice of the peace who took the acknowledgment of this conveyance, says, he saw nothing to excite a belief that he was insane. He had taken other acknowledgments of deed from this grantor, and from his conversation and manner he supposed him to be sane.

It appears to us, that this evidence, on the part of complainant, fails to establish the fact that the grantor was insane when the deed was executed. It may create doubt, but that is insufficient to overcome the presumption of sanity. To have that effect, the evidence must preponderate. But if this were not so, appellant introduced eight witnesses, acquaintances of Waggoner, who saw and conversed with him, but at no time discovered any appearance of insanity, of which

complainant's witnesses speak. Some of them purchased of him land or other property, but saw nothing to induce them to believe him insane. It appears, that immediately previous to the sale, Waggoner went, on two different occasions, to the house of one of the witnesses for the purpose of selling the land to appellant. That he then appeared to be rational. Noys testifies, that he purchased of him a piece of land, in April, 1851; had sold him goods, and had seen nothing strange or unusual in his conduct, and believed him to be competent to trade and make contracts at the time. This witness says, he was about like the other Waggoners; was always somewhat singular from the time he first knew him.

When all the evidence in the case is considered, we can scarcely entertain a doubt of his sanity. And when we consider the evidence of one of his medical witnesses, who says, that if there was a reason for it, there would appear to be some marks of simulated insanity, we can readily perceive a motive in the rise of this land from four to twenty dollars per acre. And it, to say the least, seems singular, that none of the complainant's evidence was directed to his condition at the time the transaction occurred. And as the books lay down the rule, that a permanent injury received to the mind by sickness, usually produces *dementia*, or a total imbecility of mind, and not *monomania*, we cannot believe that he was insane from that cause, as such cases are believed to be of extremely rare occurrence.

But even if the evidence establishes the fact of his insanity, we think the evidence abundantly shows that he had lucid intervals. And from the testimony of the justice of the peace, who took the acknowledgment of the deed; of Philips, who was present when the contract was entered into; of Mrs. Lilly, who saw him immediately before; and of Samuel P. Lilly, who saw him immediately after the sale, we think it abundantly appears that he was then sane. And there is no evidence that opposes this conclusion. All of complainant's evidence is indefinite as to the time when the acts testified to occurred. The decree of the court below is reversed, and the bill is dismissed.

*Decree reversed, and bill dismissed.*