# HENRY TITCOMB

## *v.*

# JONATHAN VANTYLE, Sen.

1. VERDICT—*on feigned issue out of chancery, only advisory.* The verdict of a jury, on a trial of a feigned issue out of chancery, is merely advisory to the chancellor, which he may regard or disregard, and enter a decree contrary to the finding, as, in his judgment, the weight of the evidence may justify.

2. INSANITY—*presumption in regard to.* The legal presumption is, that all persons of mature age are of sane memory, and this presumption continues until inquest found, when, perhaps, the presumption is reversed until rebutted by evidence that sanity has returned.

3. When it is sought to set aside a judgment and sale of land under it, on the ground of the insanity of the defendant at the time the judgment was rendered, it devolves upon the party averring such insanity, to prove it by a clear preponderance of evidence.

4. SAME—*when party relieved from responsibility for his acts.* When the mind is so deranged that a person can not comprehend and understand the effect and consequences of an act, or the business in which he may be engaged, the law will relieve him from his acts; but so long as he is possessed of the requisite mental faculties to transact rationally the ordinary affairs of life, he will not be relieved from the responsibility that rests on the ordinary citizen.

WRIT OF ERROR to the Circuit Court of Montgomery county; the Hon. JAMES C. ALLEN, Judge, presiding.

Mr. EDWARD LANE, for the plaintiff in error.

Mr. A. N. KINGSBURY, for the defendant in error.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, to enjoin the prosecution of an action of ejectment, and to set aside a sale of the land under which the plaintiff in the action claimed title, made by the sheriff upon an execution issued on a judgment rendered at the May term, 1860, of the circuit court of Montgomery county, in favor of one Charles Rhoads, and against Jonathan Vantyle, Sen., on the ground that Vantyle was, at the time of the rendition of the judgment and sale of the premises, insane. A feigned issue out of chancery was formed, as to the sanity of the defendant in the judgment, and submitted to a jury, and they, by their verdict, found Vantyle insane at the time of the rendition of the judgment and sale of the land, and, upon the finding of the jury, the court rendered a decree as prayed for in the bill. Several errors have been assigned, but, in the view we take of the case, we deem it only necessary to consider whether the evidence bearing upon the question of insanity, is sufficient to sustain the decree of the court. In the consideration of this question, no special importance is to be given to the finding of the jury, as often is, and properly so, in the trial of an action at law. The verdict of a jury on a trial of a feigned issue out of chancery, is merely advisory to the chancellor, which he may regard or disregard, and enter a decree contrary to the finding, as, in his judgment, he may be

of opinion the weight of the evidence may justify. *Williams* v. *Bishop*, 15 Ill. 553. On the 8th day of July, 1861, upon proper complaint made, a trial was had in the county court of Montgomery county, before a jury, and the said Vantyle was, by the verdict, found to be insane, and the verdict specified that he had been in that condition about two months. Prior to this finding, the legal presumption obtained that Vantyle was sane. The legal presumption is, that all persons of mature age are of sane memory. This presumption continues until inquest found; then, perhaps, the presumption may be regarded as reversed, until it is rebutted by evidence that sanity has returned. *Lilly* v. *Waggoner*, 27 Ill. 395.

The judgment which is attempted to be impeached by the bill having been rendered in May, 1860, and the sale having been made soon thereafter, it devolved upon complainant to establish insanity at that time by a clear preponderance of the evidence.

The complainant relied upon the testimony of five witnesses to establish insanity at the time the judgment was rendered. The first one, J. P. Herman, testified that Vantyle was insane, but he noticed no symptoms of insanity until May or June, 1861. John Adams, the next witness, says he saw nothing more until the spring of 1861. Two sons, James and Jonathan Vantyle, testify to strange conduct as early as 1858 and 1859; and, in their opinion, insanity existed at that time. Dr. A. S. Haskel, a physician, treated Vantyle as early as 1859 and 1860, and gives it as his opinion that he was then insane. This, in connection with the verdict of the jury rendered in 1861, was the substance of the evidence introduced in behalf of complainant.

To overcome this proof, the defendant called eight witnesses, who resided near Vantyle, knew him well, and transacted business of various kinds with him, and they all agree in their evidence that, prior to the judgment and sale of the land, he was sane. They saw him make contracts in regard to labor, knew that he executed notes, deeds and mortgages, and did business as other men in the neighborhood. One witness, a

Mr. Bartwell, in his evidence, says, he had known the complainant for many years. In 1861, he and his wife executed a mortgage to the witness, to secure a note to him, and a note to another party. He had often loaned the complainant money, and he paid it promptly. In 1861, the complainant came to him to borrow money to redeem the premises from the sale under the execution. The witness demanded interest on the loan at the rate of 20 per cent. The complainant refused to pay the interest, and said he would not redeem the land if he had to pay that interest; that it sold for all it was worth, and he had only paid $12\frac{1}{2}$ cents per acre for it. The witness also testified, in 1861 the complainant paid him a $50 counterfeit bill. When he discovered the bill was bad, he took it back to complainant, who said he had received it of a Mr. Nelson, of Butler, Illinois, when the two went to Butler, and complainant convinced Nelson that he had received the bill of him, and he received it back, and paid over good money.

We can not comprehend how a man could be regarded insane, and be able to transact ordinary business with the facility disclosed by the evidence of the last witness. Indeed, the testimony of all these witnesses, who were in the habit of meeting the complainant often, and had good opportunities to judge in regard to the condition of his mind, is so utterly inconsistent with the theory that he was insane, that we are led to believe the court misapprehended the weight of the evidence. At all events, the clear preponderance of the proof is so manifestly contrary to the decree that it can not be sustained. It is true, the conduct of complainant, as early as 1858 and 1859, was, in some instances, peculiar, and he, doubtless, did some things that it might be difficult to explain; but on this account he is not to be released from his contracts, or relieved from the force and effect of a judgment. So long as the complainant possessed the necessary mental faculties to transact rationally the ordinary affairs of life, he must not be relieved from the responsibility that rests upon the ordinary citizen. When the mind is so deranged that a person can not comprehend and understand the effect and consequences of an

act, or the business in which he may be engaged, then the law will release him from his acts. *Lilly* v. *Waggoner*, 27 Ill. 395. The complainant, when the note was given in 1859, upon which the judgment was rendered, seemed to comprehend and fully understand the nature of the transaction. When, after the note was due, and the summons was served upon him, he conducted himself as other rational men. And even after the sale of the premises in satisfaction of the judgment, he made efforts to raise the money to redeem from the sale, but when he found he could only obtain the money by paying 20 per cent interest, as a sane man would, he declined to redeem, preferring rather to lose the land than bankrupt himself by the payment of an illegal and ruinous rate of interest.

The evidence, in our opinion, is not sufficient to sustain the decree. The decree of the circuit court will be reversed and the cause remanded.

*Decree reversed.*