## Cyrus H. McCormick *et al.*

*v.*

## Laban Littler.

1. Lunatic—*note given for necessaries valid.* Although a person may have been adjudged insane, yet, if no conservator has been appointed, and he is in the management of his business, and there is nothing about his appearance to indicate his incapacity to contract, if he purchases an article at a fair and reasonable price, necessary and useful in his business, the seller having no notice of his being adjudged insane, he will be liable to pay the price he agreed to pay, and it will be error to enjoin a judgment on a note given for the price.

2. Same—*contracts of, when valid.* Notwithstanding the statute, a contract made with a lunatic in a lucid interval, is binding, and may be enforced against him.

3. Chancery—*defense at law.* The fact that a person has been adjudged lunatic or insane, and is under the ban of the law when he gives a note, is a legal defense to an action thereon, and should be made then, and not attempted in equity.

Appeal from the Circuit Court of Champaign county; the Hon. C. B. Smith, Judge, presiding.

Mr. J. L. Ray, for the appellants.

Mr. Justice Breese delivered the opinion of the Court :

This is an appeal from a decree of the circuit court of Champaign county, sitting in chancery, on a bill therein pending for an injunction, and making the same perpetual, and to reverse which the defendants appeal.

The facts are these:  On July 1, 1869, the agent of defendants, who are proprietors of a well known reaping and mowing machine, sold one of the machines, at the usual price, to Laban Littler, taking his two notes therefor, one of which has been paid.  Suit was brought on the other note before a justice of the peace, and judgment rendered for the amount and interest.  An execution being sued out, Mary Littler, the wife of Laban Littler, and as his next friend, applied for and obtained an injunction to stay proceedings on the writ, on the allegation that at the time of the purchase and giving the note Laban Littler was an insane person, having been so adjudged by the county court in March, 1868.  There was also an allegation of an error in the summons issued by the justice of the peace, which did not in fact exist.  The bill also alleged that the disability of Laban Littler had been removed by an order of the same court in 1872.

The answer alleges the defendants, when the sale was made, did not know of the disability of the purchaser, but deny he was a lunatic or insane, or unable to contract at the time of the sale; that he was, at the time of the purchase, sane and rational, and knew the nature of the contract he was making; that he had need for the machine, and it was of great value to him and his family in carrying on his farm; alleges that Mary Littler, the wife, knew of the purchase of the machine at the time it was purchased, and made no objection thereto; that Laban Littler paid part of the purchase money before the commencement of the suit, with the knowledge of his wife, who made no objection, and that she repeatedly expressed herself as well pleased with the machine, and promised the note should be paid.

Defendants also filed a cross-bill setting up all the facts in

relation to the commencement of the suit on the note, the rendition of the judgment, and the various executions which were issued thereon. A demurrer was sustained to the cross-bill, and a decree passed making the injunction perpetual.

The proof tends to show that Laban Littler was a man of feeble intellect. Some witnesses say he was crazy; some, insane; some, simple and foolish, and incapable of doing business; but he had acquired a handsome property, had a good farm, and traded with his neighbors. At the time of the purchase of the machine there was nothing in his conduct or appearance to excite suspicion. He came to the agent to buy the machine in company with his son, a lad about fourteen years of age, and seemed fully to understand what he wanted, and what he was doing. The agent went to the farm and set up the machine and started it in the grain, it working all right. He took dinner there on that day and saw Littler's wife and children. They all knew he had bought the machine and that the agent was there to set it up, and no one raised any objection, or told him Littler was insane; had a good deal of grain and grass to cut. No one of the family ever complained of the machine, and they have used it now about four years,—in fact, ever since the purchase,—in harvesting their crops of hay and grain.

The question is, whether, under such circumstances, the payment of the note can and ought to be enforced. The note was given in July, 1869; the judgment was rendered on it October 6, 1873. Section 8 of the act of 1869, renders all contracts with idiots, lunatics, insane or distracted persons, after the finding of a jury that such person is unfit to manage or control his property, either by note, bond, bill or otherwise, void as against such person. Sess. Laws 1869, p. 366. The statute of 1845 contains a like provision, and both provide for the appointment of a conservator when the jury shall find the facts. In this case, it does not appear a conservator has been appointed. How is it to be known a person is a lunatic and incapable of transacting business, when there are no outward manifestations of such a condition, and the records do not show his estate and affairs are in the hands of a conservator?

He, in the view of the public, is in the exclusive possession of property,—in this instance, a farm, and a good one—apparently the master and manager of it. The alleged disability in this case was removed, the manner and means not stated, in 1872, a year before suit was brought on the note. The fact he had been declared a lunatic and was under the ban of the law when the note was given, was a legal defense to the action and should have been then made.

This machine was necessary and useful to the purchaser, and, like infants, he ought to be charged on the contract for its purchase. The statute quoted, we do not think was designed to annul contracts made for necessaries, if made in good faith, and under circumstances which justify the contract.

The party purchasing had a large farm which he and his family cultivated, on which were growing grass and grain ready for the harvest. This machine was used in that harvest, and in every succeeding harvest for four years thereafter. It was an article indispensable to him, suited to his condition, and he is liable to pay the price he agreed to pay, and that is proved to have been the usual market price of such an article. Chitty on Contracts, 8 Am. Ed. 132; 4 Parsons on Con. (4 Ed.) 314; *Molton* v. *Camroux*, Exch. R. (2 W. H. & G.) 487; *McCrillis* v. *Bartlett*, 8 N. H. 569.

But, notwithstanding the statute, a contract made with a lunatic, in a lucid interval, has been held, by this and other courts, binding. *Lilly* v. *Waggoner*, 27 Ill. 395. Here, the purchaser presented no indications of insanity or lunacy, at the time of the purchase; his wife and family knew all about the purchase, and not one of them suggested an inability to make a contract, and nothing was apparent, at the time, of any disability, and no witness swears he was in that condition at that time. It would be unjust and iniquitous, under the circumstances disclosed in this record, to hold this contract void.

The decree making the injunction perpetual is reversed, and the cause remanded, with directions to the circuit court to dismiss the original bill and give full effect to the execution.

*Decree reversed.*