# THE COUNTY OF McHENRY
## v.
# THE TOWN OF DORR.

*Municipal Corporations—Suit by County to Recover from Township for Support of Pauper—Residence—Money in Possession of.*

1. The mental capacity of a pauper and insane person after being adjudged insane, to choose a residence, can be shown in the absence of a readjudication.

2. In an action by a county to recover from a township for the care and support of a pauper during certain periods, this court holds that notwithstanding said person had been adjudged insane, he had, when subsequently discharged, the legal capacity to choose his residence, and having chosen one outside the defendant, it is not liable for his keeping from the time he was taken charge of by the county the second time.

[Opinion filed May 21, 1891.]

APPEAL from the Circuit Court of McHenry County; the Hon. CHARLES KELLUM, Judge, presiding.

Messrs. A. B. COON and A. W. YOUNG, for appellant.

Counsel for appellee insist that the only effect of the verdict of August 15, 1882, finding Perry Spooner insane, was to change the presumption from one of sanity to one of insanity, and that the question might be rebutted after that by any evidence, and cite Lilly v. Waggoner, 27 Ill. 395, to sustain their position; but which case, when considered, does nothing of the kind; it merely finds that a conveyence executed *several years before* the inquisition of insanity was valid; and they only say, *obiter dicta,* " But after inquest found the presumption is reversed until it is rebutted by evidence that he has become sane." They do not say *what* evidence would be admissible, nor was that question before the court; they certainly do not hold that the question can be inquired into collaterally. Menkins v. Lightner, 18 Ill. 282, is also a case wherein a contract made *before* inquisition is passed upon, and the authorities there cited refer to contracts made after insanity is established by *proof,*

not where one has been judicially determined to be insane. And so as to the case of C. W. D. R. R. Co. v. Mills, 91 Ill. 39. And so also is Titcomb v. Vantyle, 84 Ill. 371, where the condition of the person a year *before* the inquisition of insanity was in question, and determined by oral evidence. There is nothing in that as to his condition after judicially declared insane, and no direct holding or opinion of the court as to the presumption after inquisition, what is said and quoted being simply *obiter dicta.*

The case of Langdon v. People, in 24 N. E. 874, is not a parallel case, as counsel for appellee seem to insist. In that case Langdon had never had an inquisition of insanity or been judicially found insane. He had simply at one time been confined in an insane asylum and transferred from the penitentiary by the warden's direction. The court say, on page 879: "Therefore, in considering the views hereinafter expressed, it must be borne in mind that the bare fact of the defendant's transfer from the penitentiary to the insane hospital in 1878 or 1879 is the only evidence of the unsoundness of his mind when he was so transferred." And again on page 880 : " In the present case there is no proof whatever that the defendant was adjudged to be insane in accordance with the provisions of the act in relation to the commitment and detention of lunatics. Rev. St. C. 85." Again: "The removal is not based upon insanity that is determined by an inquest or legal adjudication, but because the attending physician or warden advises it."

The Indiana case cited from, 22 N. E. 110, only reaffirms the doctrine previously laid down by that court in Redden v. Baker. The court say (p. 111): "In the case of Redden v. Baker, 86 Ind. 191, it was held that where a person had once been adjudged insane by a proper tribunal, that the presumption of insanity continued until such person had been declared sane under the proceedings provided for by our statute, and that, while the record of insanity stood, such person was incompetent to enter into any contract. Such is undoubtedly the rule where there are no counter-presumptions. * * * But in cases like this, involving the legality of a marriage, every presumption is in favor of such marriage." And they

say that "it can not be tried like ordinary questions of fact which are independent of this presumption." Evidently making this apparent modification of the rule in Redden v. Baker, on the ground of public policy, which is over and above all cases and the foundation of all rules and laws.

In a criminal case the rule is different because the law makes insanity a defense which can be inquired into in the same proceedings, but in a civil case the presumption is conclusive in a collateral proceeding such as this.

As before stated, the case of Redden et al. v. Baker, 86 Ind. 191, is a judicial construction of a statute almost identical with our own—Par. 37, Chap. 86—in providing for the trial of a person who has been declared insane and whom it is alleged has been restored to reason, as they put it—has become of sound mind again; and the principle there enunciated that the sanity, soundness of mind, or restoration to reason can only be established and shown in the manner pointed out by the statute, is exactly what we contend. Our statute points out a way of determining this fact, even if a person has no property or conservator—Par. 20, Chap. 85—and we insist that until Perry Spooner was judicially declared restored to reason by one of these processes, that the presumption of insanity was conclusive and could not be inquired into or attacked collaterally.

Messrs. C. P. BARNES and JOSLYN & CASEY, for appellee.

"As this court said in Wood v. Price, 46 Ill. 435, so must we now repeat in a case tried by the court without a jury, in which the court was required to weigh all the testimony—as much force and effect should be given to the finding of the court as to the finding of a jury. The circuit judge is in a more favorable position to weigh the evidence than we can be, and his finding not being against the preponderance of the evidence, it must stand." Thomas v. Rutledge et al., 67 Ill. 213; see also Wood et al. v. Price, 46 Ill. 435; Claybaugh v. Hennessy, 21 Ill. App. 124; Dempsey v. Whiteside, 31 Ill. App. 32; Field v. The Chicago & Rock Island Railroad Co., 71 Ill. 458; Travers et al. v. Wormer et al., 13 Ill. App. 39.

"The court saw and heard the witnesses, and very great deference should be paid to his judgment in relation to a question upon which the evidence is sharply conflicting." People v. Brooks, 22 Ill. App. 594. See also Claybaugh v. Hennessy, 21 Ill. App. 124.

"The legal presumption is, that all persons of mature age are of sane memory, but after inquest found, the presumption is reversed until it is rebutted by evidence that he has become sane." Lilly v. Waggoner, 27 Ill. 395; see also Menkins v. Lightner, 18 Ill. 282; Chicago W. D. R. Co. v. Mills, 91 Ill. 39; Titcomb v. Vantyle, 84 Ill. 371.

"When insanity of a permanent type is shown to have existed prior to the commission of an act, it will be inferred to have continued, unless the contrary be proved, down to the time of the act. It is otherwise, however, when the proof is of temporary or spasmodic mania, or of delirium tremens." Wharton's Criminal Law, 9th Edition, Vol. 1, Sec. 63, p. 89.

"As a general rule, where insanity is proven as existing at a particular period, it will be presumed to continue until disproved. 1 Greenl., Ev., Sec. 42; 2 Bish., Crim. Proc., Sec. 674; 1 Wharton's Crim. Law, Sec. 63. This rule, however, is subject to several important qualifications. One of these qualifications is that the insanity shown to have existed prior to the commission of the act must be of a permanent type, or of a continuing nature, or possessed of the characteristics of an habitual or confirmed disorder of the mind, or its peculiarities must have been exhibited for a long series of years. It is not sufficient that there be proof of a temporary or spasmodic mania. Hix v. Whittemore, 4 Metc. 545; State v. Lowe, 93 Mo. 547; 5 S. W Rep. 889; People v. Francis, 38 Cal. 183." Langdon v. The People, 24 N. E. Rep. 874; see, also, Physio-Medical College v. Wilkinson et al., Supreme Court of Indiana, 9 N. E. 167.

"If he was sufficiently recovered to be discharged, whether on parol or otherwise, it would seem that the presumption of his insanity, arising from his being in the asylum, ought to cease." Langdon v. The People, *supra*.

" Inquisitions of lunacy are necessarily *ex parte*, so far as concerns the person claimed to be a lunatic; since, on the assumption by which alone they have validity, he is a lunatic, and, if a lunatic, he is not capable of putting in a valid appearance. Unless upon the hypothesis that such proceedings are *in rem* they can not be held admissible against strangers; and, at the best, make out only a *prima facie* case." Whart., Crim. Ev., Sec. 599; also, Whart. on Ev., Sec. 599.

" It matters little whether the propositions the court refused contain correct expressions of the law or not. It is sufficient if it clearly appears the propositions which the court held to be correct state every possible principle of law necessary to be considered in the decision of the case. Other propositions were wholly unnecessary, and the court was not bound to hold them to be the law." The Germania Fire Insurance Company v. Hick, 125 Ill. 361.

" The term ' residence,' mentioned in this act, shall be taken and considered to mean the actual residence of the party, of the place where he was employed, or, in case he was in no employment, then it shall be considered and held to be the place where he made it his home." Starr & C. Ill. Stats., Chap. 107, Sec. 17, Subject, " Paupers."

LACEY, J. The appellant seeks to recover of appellee for the care and support of the pauper, Perry Spooner, during periods between August 15, 1882, and September 6, 1887, charging that such care and support was furnished at the solicitation and request of the appellee.

It appears that according to the statute, the poor of McHenry County are required to be supported by the various towns in the county in which they reside six months immediately preceding the time they become a county charge. Perry Spooner, in accordance with the provisions of the statute, was on the 15th of August, 1882, tried in the County Court before a jury, and found to be insane and a county charge. The county from that time supported him as a county charge until about the 9th of October, 1882, when without any other proceedings before a jury to declare him

County of McHenry v. Town of Dorr.

restored to reason, he was discharged as sane, and was allowed to go at large and support himself until July, 1884, when he was again taken into custody by the county as an insane pauper and supported up to the time this suit was commenced.  During this time Spooner made his home with one E. P. Grover, in the town of Greenwood in said county, being employed as a farm hand, at wages of $18 and $20 per month.

The case was tried by the court without a jury, resulting in a finding by the court for the appellee, from which and the judgment thereon rendered, this appeal is prosecuted.

The right of the appellant to recover in this case hinges on the fact as to whether or not Perry Spooner was a resident of the town of Dorr for six months prior to July, 1884, the time he was taken into the custody of the county the second time; for as to the short time he was kept the first time by the county, we think the court below was fully justified in finding that the $57 possessed by Spooner at the time he was found to be insane and a county charge, and which was taken into custody by the county, and held and returned to him by the sheriff when he was discharged in October, 1882, was amply sufficient, if it had been retained, to pay for his keeping up to that time.  The county, having failed to apply it, can not recover the amount from appellee.  If Perry Spooner was a resident of the town of Greenwood from October, 1882, to July, 1884, then, as a consequence, he was not a resident of appellee during that time.

As a question of fact, independent of any question of law, we think there was ample evidence from which the court might find that Spooner had sufficient mental capacity to choose a residence, and that in fact he did choose his residence in the town of Greenwood soon after he was discharged in October, 1882, and retained it till he was again taken into custody in July, 1884.

He had all the appearances of a sane man and was able to labor and earn his own living as well as any other farm hand; he was capable of handling a team and doing any ordinary work.  But it is insisted that the judicial determination of Perry Spooner's insanity in August, 1882, was, until he by a

like decision should be declared sane, conclusive evidence of his insanity and that in consequence the question was not open to controversy. His status, therefore, being fixed, he was incapable of choosing a residence in the town of Greenwood.

The court below was, therefore, asked to hold the following proposition as law, which it refused to do, viz.: "That the verdict of the jury in insanity proceedings in this State, regularly had, is conclusive as to the question of insanity and can not be rebutted collaterally, nor be inquired into until such a person has been declared restored to reason, either by trial by jury, judgment on writ of *habeas corpus*, or discharge by the superintendent or keeper of an insane asylum as restored."

We are unable to agree with counsel for appellant on the proposition of law. We think, at least, the mental capacity of the pauper and insane person after being adjudged insane to choose a residence, can be shown in the absence of any readjudication.

The mental capacity of such person to commit a crime may also be shown, and we think in this State generally. The appellant relies largely on the case of Redden v. Baker, 86 Ind. 191, to sustain him in his contention. We have examined that case carefully and do not think that it can be regarded as authority in this State. That decision was rendered on a statute very different from ours. In that case Martha Collier had been declared insane under a statutory proceeding in the State of Indiana, and a guardian appointed, who was afterward discharged; but she had never been again tried as to her soundness of mind and restored to reason in the " same manner as to the allegation of the unsoundness of mind " as the statute required. After she had been declared of unsound mind, and after the discharge of the guardian and after she had married a man by the name of White, she sold and conveyed for a valuable consideration certain real estate to Redden. The action was brought to set aside the conveyance, which the Supreme Court of that State held should be done. The decision was based on a statute of that State. The court says: " The question is a new one and must probably be determined as a question of statutory construction rather than purely by principle or authority alone."

The statute on the subject required the forming of an issue and trial by jury, and in case of finding the person tried of unsound mind, the appointment of a guardian, who should have the custody of the person and management of the estate, and the guardianship should terminate upon restoration to reason or the death of the ward. Sec. 10 of the statute also provided that "whenever it is alleged that such person of unsound mind has become of sound mind again, the fact may be tried as to the allegations of the unsoundness of mind." Sec. 11: "Every contract, sale or conveyance of any person, while a person of unsound mind, shall be void."

In our statute there is no such provision as to restoration as in the Indiana statute; nor is there any question here as to the property rights of Perry Spooner. The only question here is as to his mental capacity to choose his own residence after being discharged by the county authorities as of sound mind. The law favors the right to choose a residence, for it is always desirable that every person shall have a residence and a fixed place of abode. It is a matter that concerns the public in the individual's relations to society, in a similar way that his conduct and behavior affect it. It might as well be contended that an individual under like circumstances, however sane he might be in fact, could not commit crime until he was tried and again found sane. We understand that the Supreme Court has passed on this question substantially.

It is said that "the legal presumption is that all persons of mature age are of sane memory, but after inquest found the presumption is reversed until it is rebutted by evidence that he has become sane." See Lilly v. Waggoner, 27 Ill. 395; Menkins v. Lightner, 18 Ill. 282; C. M. D. R. Co. v. Mills, 91 Ill. 39; Titcomb v. Vantyle, 84 Ill. 371; McCormick et al. v. Littler, 85 Ill. 62; Langdon v. The People, 24 N. E. R. 874. In the case above cited, in 85 Ill., it was held that a contract for necessaries, even if a person were under a conservator, under the statute, where all his contracts are declared void, was binding and not within the statute. Is a residence not necessary when a supposed sane person, formerly a lunatic, like Spooner, has been discharged by the county and turned

out to shift for himself? In Langdon v. People, *supra*, it was said by the court: "If he was sufficiently recovered to be discharged on parol or otherwise, it would seem that the presumption of his insanity arising from his living in the asylum ought to cease."

We are therefore of the opinion, that, notwithstanding that Spooner had been adjudged insane, he yet, when discharged, had the legal capacity to select his residence, and having chosen one outside the town of Dorr, the appellee is not liable for his keeping from the time he was taken charge of by the county the second time. The judgment of the court below is therefore affirmed.

*Judgment affirmed.*