## IRVING A. HARGRAVES vs. ARCHIBALD THORNTON.

### JUNE 14, 1928.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

BARROWS, J.   On November 11, 1924, Archibald Thornton killed his sister-in-law and on January 26, 1925, was indicted for murder.   Plaintiff took charge of Thornton's horse for the two weeks immediately following November 11.   He then visited Thornton in jail and suggested a sale of the horse.   Thornton declined to permit a sale and directed plaintiff to keep the horse for him.   Plaintiff did so until the spring of 1925, when the horse died without fault on plaintiff's part.

At the time Thornton directed him to keep the horse, plaintiff observed nothing abnormal in Thornton's mental condition.   In the spring of 1925 a jury disagreed as to Thornton's guilt under the indictment.   Following this plaintiff sued defendant, in May, 1925, to recover for board and care of the horse, commencing proceedings by a writ of attachment upon Thornton's interest in certain real estate.

A guardian of Thornton's person and estate was appointed on July 30, 1925. Thornton, retried on the murder charge, later in 1925, was found "not guilty by reason of insanity" and was committed to the hospital at Howard where he has since remained. On May 17, 1927, his guardian entered an appearance and took upon himself the defense of the present suit. The case was tried in November, 1927, and resulted in a verdict for plaintiff for $349. Defendant offered no evidence on the merits. After refusal of defendant's motion for a new trial he is here claiming error (1) in the refusal of the trial justice to direct a verdict for defendant and (2) in the trial court's refusal of a new trial because the verdict was against the law and evidence.

Defendant's request for the direction of a verdict was based upon the claim that the adjudication of insanity abated the civil suit then pending, because of Gen. Laws, 1923, Ch. 372, "Of Guardian and Ward," Sec. 19, provides that "creditors of a ward shall file statements of their claims in the office of the probate clerk" and later sections prescribe the conditions for bringing and prosecuting actions against persons under guardianship if creditors' claims are disallowed in the probate court. Defendant asserts that by reason of plaintiff's failure to file this claim in the probate court plaintiff was not entitled to recognition in the Superior Court as a creditor of the ward. *Municipal Court* v. *LeValley*, 25 R. I. 237.

We can not sustain defendant's contention. Neither the probate court nor the guardian had power to allow or disallow this claim so far as plaintiff sought to collect it only out of the attached property. A judgment for plaintiff in this suit in no way fixes the liability upon the guardian or upon the ward's general estate which is *in cus odia legis*. The suit was commenced against a person whose lack of sanity legally had not been determined and whose property was subject to attachment for his debts. This attachment has never been dissolved. The attached property passed into the guardian's control subject to the lien. *Smart* v. *Burgess*, 35 R. I. 149, 154. Enforcement by plaintiff of his

security did not diminish rights of general creditors. We have said that filing of a mortgage debt against a decedent under a similar statute was unnecessary when the creditor relied only upon his security. *Di Iorio* v. *Cantone*, 49 R. I. 137. We see no more reason to require the filing of such a claim against the estate of a ward. Filing is for the purpose of protecting the rights of the ward's general creditors. They had rights in the attached real estate only after plaintiff's lien had been removed. The statute does not require the filing of claims, collection of which is to be made solely out of attached property at the instance of the lienor. Abatement of the rights of those who hold property of the ward under mortgage, pledge or attachment lien acquired prior to the guardianship is not expressly provided for by the statute and we see no warrant for implication of such abatement. There was no error in refusing to direct a verdict for defendant.

Although the contract of an insane person prior to adjudication of his insanity sometimes may be avoided, yet when there has been adequate consideration and full performance by the other party in good faith with resulting advantage to the lunatic and restoration of the *status quo* is impossible, liability of the lunatic may be found. *Cundall* v. *Haswell*, 23 R. I. 508, at 511. Defendant's liability was properly submitted to the jury on the reasonableness of the charge and whether, if Thornton was insane at the time he directed plaintiff to keep the horse, such keeping was a beneficial service for which Thornton ought to pay. *Williams* v. *Wentwor h*, 5 Beav. 325; *McCormick* v. *Littler*, 85 Ill. 62; *First Nat'l. Bank* v. *McGinty*, 29 Tex. Civ. A. 539; 32 C. J. 741. No contradictory evidence was offered by defendant and the jury's finding accords with the evidence of plaintiff.

Both exceptions of defendant are overruled and the case is remitted to the Superior Court for the entry of judgment on the verdict.

*William H. McSoley*, for plaintiff.
*Thomas H. Gardiner*, for defendant.