Freda Lindberg, Conservatrix of Estate of Harry Lindberg, Also Known as Harry C. Lindberg, Insane, Appellee, v. Mutual National Bank of Chicago, Appellant.

Gen. No. 42,265.

Opinion filed March 22, 1943.   Rehearing denied April 5, 1943.

RATHJE, HINCKLEY, BARNARD & KULP, ·of Chicago, for appellant; FRANCIS E. HINCKLEY and WILLIAM E. FISHER, both of Chicago, of counsel.

OKE L. PEARSON, of Chicago, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

September·10, 1941, Freda Lindberg, as conservatrix of the estate of Harry Lindberg, insane, filed her verified complaint in equity against defendant, The ·Mutual National Bank of Chicago, praying that two collateral notes executed by Harry Lindberg May 17 and May 27, 1941, be declared null and void and ·the collateral, given to secure the payment of the notes, returned to plaintiff.  Defendant filed a verified answer and afterward plaintiff moved for a summary judgment supported by an affidavit.  Defendant filed an affidavit in opposition to plaintiff's motion.  The court disposed of the case on the pleading and entered an order and decree in plaintiff's favor.  Defendant appeals.

The substance of the allegations of the complaint is that July 9, 1934, Harry Lindberg was found to be insane by the County court of Cook county and so remained to the present time. That May 17 and 27, 1941, he executed his two promissory, collateral notes, both due August 15, 1941, one for $1,787 and the other for $100, and to secure the payment of them deposited with defendant as collateral, 105 shares Common Stock, Berghoff Brewing Corporation; 10 shares Compania Swift Internationale; 10 shares Preferred Stock, Continental Baking Company; 60 shares Common Stock, General Cigar Company and 10 shares Common Stock, National Distillers Products Company. That August 30, 1941, defendant served notice on plaintiff that it would, on September 12, at a certain hour and place, sell the stock, or so much of it as would be necessary, to pay the amount due on the notes. And it is averred that the stock had an actual value of approximately $3,000; that plaintiff had demanded a return of the collateral and a surrender of the notes, which was refused. "Therefore plaintiff charged that it would be unconscionable to permit the defendant to retain possession of said collateral and said notes."

Defendant filed its answer in which it admits that July 9, 1934, an inquest was held in the County court of Cook county, concerning the mental condition of Harry Lindberg, and in the petition there filed by plaintiff, Freda Lindberg, his wife, it was alleged that Harry Lindberg had no property. That July 26, 1934, an order was entered in that proceeding, by which Harry Lindberg was committed to the State Hospital at Kankakee, Illinois, and there remained until May 19, 1935, when he was released on parole, and on August 19, 1935, discharged from the institution. Defendant denies that after Lindberg's discharge he lacked capacity to enter into a contract. The answer further sets up that after Lindberg's discharge, he

commenced a course of business dealings with a number of business firms and corporations; entered into leases for premises occupied by him and his wife, for which he paid rent; borrowed money from the Metropolitan Life Insurance Company upon his life insurance policy; engaged in stock brokerage transactions with stock brokers in Chicago; bought and sold shares of stock, repaid his loan to the Metropolitan Life Insurance Company; had numerous transactions with the defendant bank; that since his discharge from the institution at Kankakee he purchased an automobile which he drove and had it registered in his name; that on or about December 5, 1936, he bought 50 shares of Berghoff Brewing Corporation Common Stock and a certificate was issued to him; that about January 12, 1937, he bought 10 shares of the Common Stock of the General Cigar Company, and a stock certificate was issued to him; that January 7, 1938, he bought 25 shares of the Berghoff Brewing Corporation Common Stock and a certificate was issued to him; that May 19, 1939, he bought 10 shares of the Continental Baking Company Preferred Stock and the certificate was issued to him; that July 11, 1939 he bought 10 shares of National Distillers Products Corporation Common Stock and the certificate was issued to him; that May 23, 1939, he bought 10 shares of General Cigar Company Common Stock and the certificate was issued to him; that December 19, 1939, he bought 40 shares of General Cigar Company Common Stock and the certificate was issued to him; that July 26, 1940, he acquired a deposit certificate of the Compania Swift Internationale for 10 shares of stock and the certificate was issued to him. January 15, 1941, he bought 30 shares of Berghoff Brewing Corporation Common Stock and the certificate was issued to him.

It is further set up in the answer that about October 3, 1936, Lindberg opened a savings account with defendant bank and made deposits and withdrawals;

that in August, 1940, he had a loan account of $1,800, with the Terminal National Bank of Chicago, which at the request of Lindberg, defendant bank afterward paid to the Terminal Bank and at the time, the securities put up with defendant as collateral were turned over to defendant bank. That defendant in good faith dealt with Lindberg as a sane man and without any knowledge that he had ever been adjudged insane.

It was further alleged that plaintiff, Freda Lindberg, wife of Harry Lindberg, at all times since Harry's release from the State Hospital at Kankakee in 1935, knew of the business transactions of her husband, consented to and approved of them and gave no notice to any person with whom Harry dealt that he had been adjudged insane, and it was averred that she colluded and conspired with her husband to avoid obligations on the notes involved in suit and caused him to be readmitted to the hospital for the insane June 5, 1941. Defendant denied that the notes were void.

The affidavit filed in support of plaintiff's motion for a summary judgment set up substantially the facts alleged in the complaint and defendant's affidavit set up substantially the same facts as those alleged in its answer.

The court held that since Lindberg had been adjudged insane by the County court of Cook county July 9, 1934, and since there had been no readjudication of the matter by the same court, and since under the provisions of § 12, ch. 85, Ill. Rev. Stat. 1937, every note or other contract made by a person adjudged insane was void, no recovery could be had.

Section 22, ch. 85, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 77.022] provides that where a person has been adjudged insane and committed to a state institution, as the State Hospital at Kankakee, such person may be paroled or discharged. That section provides: "Authority to discharge patients from either of the

state institutions for the insane is vested in the Department of Public Welfare, . . . may be made for either of the following causes, namely: . . . because he has recovered from the attack of insanity, or because he has so far improved as to be capable of caring for himself, or because the friends of the patient request his discharge, and in the judgment of the Department no evil consequence is likely to follow such discharge, or because there is no prospect of further improvement under treatment, and the room occupied by an incurable and harmless patient is needed for the admission of others who are unsafe to be kept at large or probably curable. Authority is also vested in the Department to release the patients on parole for any term not exceeding three months; and, if not returned to the institution within that period, a new order of commitment from the county judge shall be necessary in order to the readmission of any such paroled patient to the institution; Provided, That the court may make such order upon the old verdict, if satisfied that the patient in question is still insane. . . . And no patient who has recovered his reason . . . shall be declared discharged until at least ten days after notice shall have been given to the judge of the county court having jurisdiction in the case, in order to enable the said judge to make some proper order as to the disposition of the said patient, when so discharged, which order shall be entered of record, and a copy thereof furnished to the Department of Public Welfare.''

Section 25, of the same chapter provides: ''Whenever notice shall have been given to the judge of any county court that any patient committed to any hospital or asylum in this state, under the order of said court, has been discharged cured, upon receipt of such notice signed by the superintendent the judge shall enter an order adjudging the patient to be sane and restoring the patient in question to all his rights as a citizen.'' No contention is made that the parole and

discharge of Lindberg from the State Hospital at Kankakee were not in every particular valid and in compliance with the law.

We think the court erred in holding that since Lindberg was adjudged insane by the County court of Cook county July 9, 1934, this was a judicial determination and conclusive of his insanity until that court should, by a like decision, declare him sane. *Lilly v. Waggoner,* 27 Ill. 395; *Titcomb v. Vantyle,* 84 Ill. 371.

In the *Lilly* case [27 Ill. 395] Waggoner in 1851 conveyed real estate to Lilly. In 1858 Waggoner was adjudged insane by the County court of Moultrie county and shortly afterward a bill was filed to set aside the conveyance on the ground that Waggoner was insane at the time of the conveyance. The trial court set aside the conveyance but the decree was reversed on appeal. The court there announced a rule of law which has been followed to the present time by our Appellate and Supreme Courts. The court there said: "The legal presumption is, that all persons of mature age are of sane memory. But after inquest found, the presumption is reversed, until it is rebutted, by evidence that he has become sane. When the transaction complained of occurred before the inquest is had, the proof of insanity devolves upon the party alleging it, but it is otherwise if it took place afterwards."

That rule was again stated in *Titcomb v. Vantyle,* 84 Ill. 371 and again in *Chicago W. D. Ry. Co. v. Mills,* 91 Ill. 39; *Langdon v. The People,* 133 Ill. 382–404; *Kelly v. Nusbaum,* 244 Ill. 158; *McGregor v. Keun,* 330 Ill. 106–114; *Kasbohm v. Miller,* 366 Ill. 484–498.

In *County of McHenry v. Town of Dorr,* 39 Ill. App. 240 suit was brought by the county against the town to recover for the support of Perry Spooner from August 15, 1882 to September 6, 1887. Spooner had been adjudged insane after a jury trial by the County court. The county supported him as a county charge until October 9, 1882, when without any other proceed-

ing before a jury to declare him restored to reason, he was discharged as sane and was allowed to go at large and support himself until July, 1884, when he was again taken into custody by the county as an insane pauper and supported up to the time the suit was commenced. The question of Spooner's residence was important and the court said he had sufficient mental capacity to choose a residence, which he did. The court there said: "But it is insisted that the judicial determination of Perry Spooner's insanity in August, 1882, was, until he by a like decision should be declared sane, conclusive evidence of his insanity and that in consequence the question was not open to controversy. His status, therefore, being fixed, he was incapable of choosing a residence in the town of Greenwood. . . .

"We are unable to agree with counsel for appellant on the proposition of law. We think, at least, the mental capacity of the pauper and insane person after being adjudged insane to choose a residence, can be shown in the absence of any readjudication." The court continuing said that the county relied largely on the case of *Redden v. Baker,* 86 Ind. 191, to sustain its contention. The court distinguished that case and said: "That decision was rendered on a statute very different from ours. In that case Martha Collier had been declared insane under a statutory proceeding in the State of Indiana, and a guardian appointed, who was afterward discharged; but she had never been again tried as to her soundness of mind and restored to reason in the 'same manner as to the allegation of the unsoundness of mind' as the statute required."

The statute in Indiana, as the court pointed out, provided that when a person had been declared insane and afterward became sane, there must be a second hearing by the court to determine that the person had recovered her sanity. There is no such provision in our statute, from which we have above quoted. Sec-

tion 22, ch. 85, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 77.022], provides that where a person has been adjudged insane and confined to a state institution he may be discharged by the Department of Public Welfare because the insane person has recovered or has so far improved as to be capable of caring for himself or because the friends of the patient requested his discharge and in the judgment of the department no evil consequence is likely to follow such discharge. But see § 11, ch. 85 [Jones Ill. Stats. Ann. 77.011], and *Belz v. Piepenbrink,* 318 Ill. 528–535.

Section 11 provides that upon the return of the finding the jury or the commission on the question of the insanity of a person the court shall enter a proper order in accordance with the finding of the jury or the commission which may be to discharge him or to commit him to a hospital for the insane. The section then provides: "But whatever order may be made in the case shall stand and continue to be binding upon all persons whom it may concern until rescinded, reversed or otherwise legally superseded or set aside." Whether in the instant case the order adjudging Lindberg insane was in effect superseded when he was discharged from the hospital by the Department of Public Welfare, need not here be decided for the reasons hereinafter stated.

In *Belz v. Piepenbrink,* 318 Ill. 528, the court said, (p. 535): "Appellant says the judgment of the county court finding Belz insane in 1886 not having been rescinded, reversed or otherwise legally superseded, as provided by the next to the last sentence of section 11 of chapter 85, (Cahill's Stat. 1923,) is conclusive of his continued mental condition. Such a record, when properly introduced in evidence in a will contest, is not conclusive on the question of insanity at the time of making the will but is to be considered by the jury for what it is worth. *Holliday v. Shepherd,* 269 Ill. 429; *In re Estate of Weedman,* 254 id. 504."

In *Stitzel v. Farley*, 148 Ill. App. 635, it was held that notwithstanding the provisions of our statute which make void the contracts of a person made after his adjudication as insane, a contract made by him during the lucid interval is binding without adjudication of restoration to reason. In that case judgment by confession was entered against Farley on two notes. Afterward a motion was made by Farley's conservator, to set aside the judgments, to recall the execution, to substitute her as a party defendant and for leave to plead. The cases were afterward tried together, the jury found in plaintiff's favor, judgments were entered on the verdicts and defendant appealed. The evidence showed that June 13, 1902, Farley was adjudged insane by the County court of Lee county and committed to the insane asylum at Elgin. April 10, 1904, he was released from the asylum as improved. A conservator had been appointed for him who afterwards died and later Elizabeth Farley was appointed conservator. There was no adjudication of the court reinstating Farley after he had been adjudged insane. It was contended that the notes which were made in 1907 were void because the order adjudging Farley, the maker of the notes, insane, was of record and he had not been restored. A number of witnesses testified that at the time of the making of the notes Farley was of sound mind; others testified to the contrary. The court then referred to the section of the statute which declared a note made by one after he had been adjudged insane and not restored, was void, and to the other sections of the statute which provided for the restoration of the insane person for whom a conservator had been appointed, and said: "The courts of last resort in this state hold that notwithstanding the statute, a contract made with a person after an adjudication of insanity, but made during a lucid interval is binding, and may be enforced against him, and that

where a person has been adjudged insane and afterwards released from the asylum as improved, with a recovery of his reason, contracts made by such party are valid without an adjudication of restoration to reason. *McCormick v. Littler*, 85 Ill. 63; *Lilly v. Waggoner*, 27 Ill. 395; *Clay v. Hammond*, 199 Ill. 377; *Langdon v. People*, 133 Ill. 382; *Searle v. Galbraith*, 73 Ill. 269; *Speck v. Pullman Car Co.*, 121 Ill. 33; *Titcomb v. Vantyle*, 84 Ill. 371; *Am. Bible Soc. v. Price*, 115 Ill. 623; *Martin v. Jamison*, 39 Ill. App. 248.'' The judgment was reversed and the cause remanded to be retried on the merits.

*McGregor v. Keun*, 330 Ill. 106, was a suit brought to set aside two warranty deeds on the ground of the mental incompetency of the grantor. In again stating the rule of law now under consideration the court said; (p. 114): ''Beginning as far back as 1862 this court in *Lilly v. Waggoner*, 27 Ill. 395 said: 'The legal presumption is that all persons of mature age are of sane memory, but after inquest found, the presumption is reversed until it is rebutted by evidence that he has become sane. When the transaction complained of occurred before the inquest is had, the proof of insanity devolves upon the party alleging it, but it is otherwise if it took place afterward.' In *Titcomb v. Vantyle*, 84 Ill. 371, Vantyle, upon complaint and trial had in the county court before a jury, was found to be insane. The court said: 'Prior to this finding the legal presumption obtained that Vantyle was sane. The legal presumption is that all persons of mature age are of sane memory. This presumption continues until inquest found. Then, perhaps, the presumption may be regarded as reversed until it is rebutted by evidence that sanity has returned.' ''

In *Mut. Life Ins. Co. v. Wiswell*, 56 Kan. 765, it was held that an adjudication of insanity followed by commitment of the patient to an asylum for the insane

does not create a conclusive presumption of the continuance of the insanity several years after the discharge of the patient from the asylum.

In the instant case, Lindberg was adjudged insane July 9, 1934, and confined to the State Hospital for the insane at Kankakee. He was released on parole in May, 1935, and discharged August, 1935. He executed the notes involved May 17 and 27, 1941. After his discharge he carried on business by making leases, buying stocks, borrowing money from banks, making collateral notes, for a period of more than 5 years before any question of his insanity was raised. During the 5 years no one questioned his sanity and merely because an order was not entered by the County court, restoring him to his status as a sane person, plaintiff says, is conclusive evidence that he was insane during the 5 years. We cannot agree with this contention. We think the question whether Lindberg was sane or insane at the time he executed the notes, was one of fact. The effect of the remoteness of the adjudication that he was insane is, of course, to be considered. No general rule can be given on the subject of remoteness but each case must depend on its particular circumstances. "The rule of reason" must constantly be kept in mind. *Maher v. N. Y. C. & St. L. R. R. Co.*, 290 Ill. App. 267; *Standard Oil Co. of N. J. v. The United States*, 221 U. S. 1; *Mertz v. Guaranty Trust Co.*, 247 N. J. 137; *In re Riker*, 124 N. J. Eq. 228.

For the reasons stated, the decree of the Superior court of Cook county is reversed and the cause remanded with directions to hear the case on its merits.

*Reversed and remanded with directions.*

MATCHETT, P. J., and McSURELY, J., concur.