[No. 2,780.]

## DUANE BALLARD AND ISAAC R. HALL *v.* JESSE D. CARR.

CONTRACT AGAINST GOOD MORALS.—A contract entered into between a client and an attorney, in which the attorney undertakes to resist a motion for a new trial in a case in the District Court of the United States in which a Mexican grant of land has been confirmed to the client, and to procure an order making the decree of confirmation final, or to procure a dismissal of the appeal, should one be taken, and to receive for his services a portion of the land, is not *contra bonos mores*, if no concealment or improper practices were to be used, or were in fact used by the attorney, in performing the contract on his part.

SPECIFIC PERFORMANCE OF CONTRACT.—A Court of equity will not, for the want of mutuality, refuse to enforce the specific performance of a contract between an attorney and client, by which the attorney undertakes to give his professional services in resisting a motion for a new trial made in the District Court of the United States, in a case where a Mexican grant of land has been confirmed to the client, and to procure the dismissal of an appeal if one is taken, and the client agrees to convey to the attorney a portion of the land, if he succeeds in his undertaking.

WAIVER OF FULL PERFORMANCE OF CONTRACT.—If a contract is entered into between an attorney and client, by which the attorney agrees to give his professional services in the matter of a confirmation of a Mexican grant of land in the United States courts; and, if the confirmation becomes final, the client agrees to convey to the attorney a portion of the land, and the attorney, after performing some service, is absent when the case is

called in Court, and the client employs another attorney to assist in the matter, the client waives a full performance of the contract on the part of his attorney, if he still continues to recognize him as his attorney, and avails himself of his service.

HE WHO ASKS EQUITY MUST DO EQUITY.—If a party appeals to a Court of Equity for the specific performance of a contract, he must himself do equity, and submit to such terms as a Court of Equity will impose.

EQUITY BETWEEN ATTORNEY AND CLIENT.—If an attorney asks the specific performance of a contract to convey to him land for his professional services, and the client has employed other counsel to assist in the absence of the attorney, equity will allow the client compensation for the services of the counsel, and the amount of the compensation is the value of the services rendered.

APPEAL from the District Court, Fifteenth Judicial District, City and County of San Francisco.

On the 5th day of February, 1858, the District Court of the United States for the Southern District of California, entered a decree confirming to Thomas O. Larkin a tract of land in Monterey County, known as the Rancho Cienga del Gabilan, containing eleven square leagues. The grant was alleged to have been made to José Antonio Charvis, in Monterey, on the 26th day of October, 1843, by Manuel Micheltoreno, then Governor of California, and Charvis had sold to Larkin. The grant had been presented to the Commissioners for settling private land claims in California, and by them rejected, and the decree of the District Court was made on a review of their decision. On the 10th day of February, 1858, the District Attorney of the United States made a motion for a re-hearing or new trial, in the District Court, which motion was based on an affidavit that the grant was fraudulent—one of the so-called "Limantour frauds"—and that the seal attached to it showed this to be the case. Isaac Hartman was counsel for Larkin in the matter of the confirmation. This motion of the District Attorney was pending until March, 1860, when the defendant Carr purchased the land from the executors of Larkin, who, in the meantime, had died. Carr entered into the following contract with Hartman, on the day it bears date:

"This agreement, made and entered into this twentieth day of September, A. D. 1861, between Jesse D. Carr, of

the first part, and Isaac Hartman, of the second part, both of the city of San Francisco, State of California, witnesseth as follows:

" That the said party of the first part hereby retains and employs the said party of the second part, as his attorney, to procure an order or decree of the District Court of the United States for the Southern District of California, making the decree final in said Court, which has already been entered up in case No. 314 therein, to wit: the case known as Thomas O. Larkin against the United States, for the place known as the Cienga del Gabilan, or to procure the dismissal of any appeal to the Supreme Court of the United States, that may be taken therein by the said United States.

" And the said party of the second part hereby agrees and undertakes on his part to do and perform the services above mentioned and set forth.

" In consideration of which the party of the first part agrees and undertakes, that so soon as the above services are performed by the party of the second part, he will then convey to said party of the second part two undivided leagues of the tract of land above mentioned and described, which said conveyance is to be made by instrument in writing in due form of law.

" And which conveyance of said two leagues of land, the said party of the second part agrees to receive and accept as full compensation of the services aforesaid.

" In witness whereof the parties have hereunto set their hands and seals, the date above written.

J. D. CARR,     [L. S.]

·ISAAC HARTMAN.     [L. S.] "

Hartman advised his clients that the best policy was to delay the motion for a rehearing in the District Court until five years should elapse from the date of the decree of confirmation, so that the time for a writ of error to the Supreme Court of the United States would expire, and he seems to have acted upon this advice. The motion for a rehearing was finally called for argument, and submitted about the 1st of November, 1863, and Hartman argued it

for Carr, and filed a brief. Hartman soon after left for Washington, where he had business in relation to land cases, and was away until the next summer. On the 15th day of March, 1864, the Court, of its own motion, made an order for a re-argument in the case, to be had on the 6th day of June, 1864. April 30, 1864, Carr wrote to Hartman at Washington, that a re-argument of the case had been ordered, and that he had got Mr. Patterson to go down and argue it, and he desired Hartman to procure certified copies of certain decisions in the Supreme Court of the United States, for the use of the Court. W. H. Patterson was an attorney and counsellor at law in the city of San Francisco. In June he appeared in the case at Monterey, and argued it for Carr, who, in the meantime, had been substituted on the record in place of Larkin, as the plaintiff. The District Attorney of the United States, on this argument, insisted that the grant was a forgery, and tried to demonstrate that it had on it the Limantour seal. Mr. Patterson in his reply and brief, argued that, assuming the grant to be a forgery (and he did assume it,) the United States had, before the decree of confirmation in 1858, in its possession, in its archives, conclusive proof that it was a forgery, and, having neglected to produce it on the trial, had been guilty of laches and a rehearing would not now be granted. Hartman did not return to California until August, 1864. The motion for a rehearing was denied on the 14th of August, 1865, and the confirmation became final, the time for an appeal having passed. Carr continued to consult Hartman with regard to the case, and before the motion was decided, got him to endeavor to obtain from the Attorney-General of the United States at Washington, an order to the United States District Attorney in California, to have the motion dismissed.

The plaintiff's testimony tended to show that Carr knew that Hartman was going to Washington in the fall of 1863, to remain during the winter, and made no objection. It did not appear that Hartman, in carrying out the contract on his part, concealed anything from the Court or Government, or used any improper practices. The grant was sur-

veyed, and the final survey approved by the Surveyor-General, in April, 1866. In the fall of 1865, Hartman applied to Carr for a deed of two leagues undivided in the grant. Carr replied that he did not understand that his services ceased, or that he was to have a deed until he (Carr) obtained a patent. The plaintiffs were the assignees of Hartman, and commenced this action for a specific performance of the contract. Among other defenses, Carr averred, in his answer, that the grant was a forgery, and that Hartman knew it was a forgery when the contract was made, and entered into it with intent to conceal the forgery from the Government of the United States and its officials, and to procure from the United States the eleven leagues of land under the pretense that the grant was genuine, and that the contract was against public policy. The only witnesses on the trial were Hartman for the plaintiffs, and Patterson and Carr for the defendant. Carr paid Patterson five thousand dollars for his services in the case. The Court below rendered judgment for the defendant, and the plaintiffs moved for a new trial. In denying a new trial the Court delivered the following opinion:

" This action was brought to compel the specific performance of a contract—the conveyance of certain real estate. The case was tried by the Court without a jury, and judgment given for the defendant on the grounds—1st. Want of mutuality. 2d. That the plaintiff's assignor did not comply with the terms of the contract relied upon; and 3d. That the contract was against public policy, and therefore void. Since the decision of this case, our Supreme Court, in *Hall* v. *Center*, 40 Cal. 63, have held that the terms of a contract of the character counted upon in this action, can be specifically enforced. To that extent this Court erred. On a review of the evidence, this Court is still of the opinion that the plaintiff's assignor did not perform the contract on his part, and was not excused or prevented from so doing by the defendant, and that the same is *contra bonos mores*.

Plaintiff's motion for a new trial denied."

The defendant appealed from the judgment and order denying a new trial

*H. F. Crane* and *S. M. Wilson*, for the Appellants, argued that Carr should not have employed another attorney without consulting Hartman, as there was plenty of time between the day the re-argument was ordered and the day the argument was fixed for, and cited *In re Paschal*, 10 Wallace, U. S. 496; *Wylie* v. *Cox*, 15 How. U. S. 416; and *Sloo et al* v. *Law*, 4 Blachford, 268. They also argued that the employment of Patterson was voluntary on Carr's part, and that Carr showed by his subsequent conduct that he waived Hartman's laches or default, if there was any, and cited Fry on Spec. Perf. sec. 657; *Noble* v. *James*, 2 Grant's Cases, Pa. 283; *Williams* v. *Bank of U. S.* 2 Pet. 101; *Risinger* v. *Cheeney*, 2 Gilman, 90; and *Huntington* v. *Mc. Govern*, 29 Pa. 81. They further argued that the Court would not indemnify Carr for his expense in employing Patterson, and cited *Oaldfield* v. *Round*, 5 Ves. 508; *Calcraft* v. *Roebuck*, 1 Ves. 221; *Winne* v. *Reynolds*, 6 Paige, 407, and 3 Parsons on Cont. 412.

*W. H. Patterson*, for Respondent, argued, that, as Hartman did not perform the contract, the plaintiff had no equity, and cited 2 Story's Eq. Jur. sec. 742; *Slocum* v. *Clossen*, 1 How. Ct. of Appeal cases, 705; and *Tibbs* v. *Morris*, 44 Barb. 144. He further argued, that, whether complete performance of a contract for professional services entitled the party to a specific performance was not to be considered, for, until complete performance, the contract was not mutual; and as there had not been complete performance in this case, the contract could not be enforced for want of mutuality, and cited *Tyson* v. *Watts*, 1 Md. Ch. 13; *Hamblin* v. *Dinneford*, 2 Edward's Ch. 531, and *Phillips* v. *Burger*, 8 Barb. 527.

By the Court, RHODES, J.:

There is not sufficient evidence in the case to support the defense, that the contract entered into between Hartman and the defendant was *contra bonos mores*. The title to the

rancho had already been confirmed, and Hartman undertook to resist a motion in the nature of a motion for a new trial, and to procure an order making the decree of confirma'ion final, or to procure a dismissal of the appeal, should an appeal be taken to the Supreme Court of the United States. In performing such services, it is not shown that any concealment or improper practices were to be, or were in fact, employed by Hartman.

The objection that the contract cannot be enforced, because of the want of mutuality, cannot be sustained. (*Hall* v. *Center*, 40 Cal. 63.)

The evidence shows that after the defendant had employed Patterson to re-argue the motion before the District Court, he continued to recognize Hartman as his attorney, and availed himself of his service. This must be regarded as a waiver of a full performance of the contract on the part of Hartman. The plaintiff having appealed to a Court of Equity to enforce the performance of the contract on the part of the defendant, must himself do equity, and must submit to such terms as a Court of Equity would impose. Compensation must be allowed to the defendant, for the services of Patterson, and it must be made an equitable lien in favor of the defendant, upon the land to which the plaintiff is entitled under the contract. The amount of the compensation is the value of the services rendered by Patterson. The defendant will be permitted to amend his answer, if he so elects, on the return of the cause.

Judgment and order reversed, and cause remanded for a new trial. Remittitur forthwith.

Mr. Chief Justice WALLACE, being disqualified, did not sit in this case.