THE TOPEKA WATER-SUPPLY COMPANY v. H. C. ROOT.

No. 7769.

1. SELLER AND BUYER—*Specific Performance—Action—Parties.* Where A. makes a written contract for a sale of real property to B., which is forthwith placed on record, and afterward conveys the property to C., who buys with constructive notice of the rights of B. under his contract, *held*, that an action to compel a conveyance of the legal title, after full performance of his part of the contract by B., may be maintained against C., and that A. is not an indispensable party to the action.

2. CONTRACT—*Lunatic—Restoration to Reason.* Where a person has been duly adjudged insane, but no guardian of her person and estate has been appointed by the probate court, and where such person, after having been committed to the insane asylum, is discharged in an improved condition, and afterward entirely recovers her reason, *held*, that a contract entered into by her more than seven years after such adjudication of insanity, and after such entire recovery of her reason, is valid without any adjudication by the probate court that such person has been restored to reason.

3. HOMESTEAD, *Outside of City.* In the absence of any proof on the subject, a tract of land will be presumed, for the purposes of determining the extent of a homestead exemption, to be outside the limits of an incorporated city; and where it appears that an ordinance extending the boundaries of a city entirely around the tract, which was an island, was passed by the city council, but that the tract was never platted into lots, and that the owner never consented in any manner that such land should be included within the city, in the absence of any further showing, it is *held*, that such land did not become a part of the city.

4. ———— *Reduction of Homestead Exemption.* To reduce the homestead exemption to one acre, it is not sufficient that the land be entirely surrounded by the exterior limits of an incorporated city, but it must be included in and become a part of the city.

5. CONTRACT—*Mutuality.* Where one party agrees to convey lands in consideration of services to be performed by the other, there is no such lack of mutuality in the contract, after such services have been fully performed, as will necessarily defeat an action for specific performance of the contract.

6. ATTORNEYS—*Agreement to Prosecute Action—Consideration.* R. & C., attorneys at law, entered into a contract with F. and wife, by which they agreed to prosecute an action to final deter-

mination for the recovery from the defendant of a tract of land which was the homestead of F. and wife. In consideration of such services, F. and wife agreed to convey to them one-half of the property. After suit had been brought and prepared for trial, a settlement was effected between the defendant and F. and wife. The pending action was dismissed, and F. and wife conveyed the land to the defendant. *Held*, That in this action brought by R., who has succeeded to all the rights of C., to compel a conveyance, by the defendant in the former suit, of one-half of the land, this court cannot say, in opposition to the findings of the trial court, that the contract was so unjust and inequitable that enforcement thereof will be refused.

7. SETTLEMENT OF SUIT—*Rights of Attorneys under Contract.* The reasonableness or unreasonableness of such a contract is not to be determined solely by the value of the services actually rendered and the value of the property to be conveyed. Nor will a settlement made between the parties at an early stage of the litigation necessarily deprive the attorneys of their rights under the contract, and compel them to resort to an action for compensation in money.

8. CONTRACT *for Compensation, Construed.* In 1881 and 1882, F. and wife owned and resided upon a tract of about 10 acres of land as their homestead. By two deeds, executed, respectively, on October 5, 1881, and January 26, 1882, they undertook to convey this homestead to the W. Co. The wife had been adjudged insane in 1878, and was still of unsound mind at the time of the execution of these deeds. R. & C., having, under a contract made with F. and wife after her restoration to reason, prosecuted as her attorneys to final determination an action for the recovery of said land, under a contract in writing and duly recorded, by which they were to receive one-half of the land in payment for their services, are not entitled to a decree for a conveyance of such land without repayment of one-half the money paid by the W. Co. to F. and wife therefor; nor are they entitled to lasting and valuable improvements placed on the land by the W. Co. while in possession thereof under such deeds.

*Error from Shawnee District Court.*

THIS action was brought by H. C. Root, as plaintiff, to compel The Topeka Water-Supply Company to convey to him the undivided one-half of lot 5, of section 30, township 11, range 16, in Shawnee county. This lot was purchased by Hugo Felitz in 1877, and was

occupied by himself and family as a residence from that time until the trial of this action. On October 1, 1878, Catherine, wife of said Hugo Felitz, was adjudged to be insane, and on October 8 she was placed in the asylum at Osawatomie. No guardian, however, of her person or estate was appointed, nor was there any express adjudication by the court, or finding by the jury, that she was incapable of managing her affairs. On August 7, 1879, she was discharged from the asylum on account of her improved condition. On October 5, 1881, Felitz and wife executed a deed to the water company for an undivided one-half of the lot for $400, and on January 26, 1882, they executed another deed for the other half for $750. On the 22d of February, 1886, Hugo and Catherine Felitz entered into a contract with H. C. Root and J. W. Campbell, by which it was agreed that Root and Campbell should commence a suit against the water company, as attorneys for Felitz and wife, to set aside the two deeds before mentioned, and should prosecute such suit to final determination, and in payment for their services Felitz and wife agreed to convey to Root and Campbell an undivided half of said lot. It was provided further, that Felitz and wife should pay all necessary expenses of the suit, and that it should not be compromised or settled without the advice and consent of Root and Campbell. This contract was duly acknowledged, and recorded in the office of the register of deeds on the 1st of March, 1886. On the 2d of March, 1886, in accordance with the terms of the written agreement, as subsequently modified by parol, an action was brought by Root and Campbell in the name of Catherine Felitz, in the superior court of Shawnee county, against the Topeka Water-Supply Company, to set aside the deeds referred to in the contract. Root and

Campbell made all necessary preparations to try the suit. On the 25th day of August, 1886, Catherine Felitz was adjudged by the probate court of Shawnee county to be a person of sound mind. On the following, day, a settlement was made between the water company and Felitz and wife, by which said action was dismissed by Catherine Felitz, and a quitclaim deed to the lot was executed by Felitz and wife to the water company, for which the water company paid $390, and executed to Felitz and wife and the survivor of them a life lease of the lot, subject to their right to use it for the purpose of obtaining a supply of water, and other provisions not necessary to state. This settlement was effected without the knowledge or consent of Root and Campbell. At the time of this settlement, Hugo Felitz was 63 years old, and his expectancy of life the court finds to have been about 12 years; and Catherine Felitz was 54 years old, and her expectancy of life 18 years. The lease given by the water company to Felitz is found to have been of the value of $125 to $150 per year. It is also found by the trial court that, at the time of the execution of the first two deeds to the water company, in 1881 and 1882, said lot was the homestead of Felitz and wife, and that Catherine Felitz was then insane and incapable of consenting to the alienation of said homestead; and that on February 22, 1886, the date of the contract between Root and Campbell and Felitz and wife, Catherine Felitz was of sound mind and capable of contracting. On December 8, 1886, Campbell and wife conveyed by deed to Root all their interest in said lot. Afterward, Root prepared a deed for the undivided half of the lot and presented it to the water company, and demanded its execution and the conveyance to him of the land therein described. This de-

mand was refused, and thereupon this action was
instituted.   The case was first tried, and a judgment
rendered in favor of the defendant.   On proceedings
in error in this court, the judgment was reversed, and
a new trial ordered.   (*Root v. Water-Supply Co.*, 46
Kan. 183, 189.)   The case was afterward tried in the
district court on the 29th of June, 1891.   The court
made very full findings of fact and conclusions of law,
and entered judgment in favor of the plaintiff, direct-
ing a conveyance as prayed for.   The defendant brings
the case again to this court.

*J. D. McFarland*, for plaintiff in error.

*Wm. P. Douthitt*, and *H. C. Root*, for defendant in
error.

The opinion of the court was delivered by

ALLEN, J.: Many questions are presented by the
record in this case, and ably argued by counsel on
both sides.   Some of them we answer with much dif-
ficulty, and without entire freedom from doubt.   The
questions will be considered in the order in which they
are discussed in the brief for plaintiff in error.

I. It is objected that there is a defect of parties,
that Hugo and Catherine Felitz are necessary parties
to this action, and that no decree for a specific per-
formance can be rendered without their presence.
The title which the plaintiff sought to have conveyed
to him passed from Felitz and wife to the water com-
pany.   The contract under which the plaintiff claims
was on record at the time of the conveyance, and the
water company acquired its title subject to the rights
of Root and Campbell, and charged with full notice of
such rights.  ˙ If the plaintiff is in equity entitled to a
half interest in the land, the water company took its

conveyance from Felitz and wife charged with that equity, and holds it only as a. trustee for his benefit. The rights of Felitz and wife cannot possibly be determined in this action, nor does the plaintiff seek to affect them in any way. He seeks merely to obtain a legal title which he alleges the defendant holds as his trustee. The case of *A. T. & S. F. Rld. Co. v. Benton*, 42 Kan. 698, decides that a subsequent purchaser holding the legal title is a necessary party to an action for specific performance, but does not hold that the vendor, after having conveyed away the title to a third person, is a necessary party. In the case of *Gregg v. Hamilton*, 12 Kan. 333, the vendor does not seem to have been regarded as a necessary party, and we now hold that he is not.

II. It is urged that the contract sued on is absolutely void if the premises were a homestead at the time of its execution ; that Catherine Felitz having been adjudged insane prior to the execution of the contract, and there having been no subsequent adjudication that she had been restored to her reason, the statute makes the contract absolutely void, and that other proof of her restoration would be unavailing ; that the adjudication of insanity fixes the *status* of the person, and remains in full force as an adjudication until it is judicially determined that such person has been restored to reason. Section 34 of the act concerning lunatics and habitual drunkards provides :

"No contract of any person found to be of unsound mind or an habitual drunkard, as hereinbefore specified, which shall be made without the consent of his guardian, shall be valid or binding ; and such guarddian may sue for and recover any money or property which may have been sold or disposed of by his ward without his consent."

It is said that this is an express statutory declaration rendering the contract absolutely void, and that the real estate of an insane person can only be disposed of in the manner pointed out by the statute, and that there can be no such thing as a ratification of an absolutely void contract. There are two main purposes to be subserved by trials in the probate court of persons alleged to be insane. One is that they may be placed in an asylum for treatment of their disease; the other, that they may be placed under guardianship, and their property taken care of. Section 5 of the act mentioned provides for a jury to try the question, and contains a form of verdict which seems to be framed mainly to meet the first purpose named, and contains nothing with reference to whether the person is capable of managing his or her affairs. There are, doubtless, cases where a person is diseased in mind, and needs medical treatment, yet is entirely capable of managing his business affairs, though a finding of insanity ordinarily implies incapacity to transact business. Whatever the reason therefor may have been in this case, there was no finding by the jury of incapacity on the part of Catherine Felitz to manage her affairs, and no guardian was ever appointed for her person or estate by the probate court. Section 37 of this act makes provision for inquiring into the question of the restoration of a person of unsound mind or an habitual drunkard, and by the succeeding section it is provided that, if it be found that such person has been restored, he shall be discharged from care and custody, and his guardian shall immediately settle his accounts. The question presented, then, is, whether a person who has been adjudged insane and placed in an asylum for treatment, and has thereafter been discharged from the asylum be-

13—56 KAS.

cause of her improved condition is conclusively presumed to continue insane, notwithstanding the fact that she has no guardian and is not under treatment for insanity, until a formal adjudication shall be had finding that she has been restored to her reason. After her discharge from the asylum, and after her restoration to reason, in fact, the only purposes such an adjudication could serve would be to discharge her guardian, if she had one, to restore her to the possession of her property, if she possessed any, and to remove her disability to enter into contracts. We think it would be extremely hazardous to hold that all contracts made by a person in fact sane and not under guardianship are void merely because of a prior adjudication of insanity, and a failure to have an adjudication of restoration to reason. Such a rule might lead to most unjust results. A person might be in fact entirely sane, and of extraordinary shrewdness in business affairs, being under no restraint, and having no guardian in charge of his property, it would certainly be wrong to allow him to enforce or avoid his contracts as he might see fit. But in this case it is not Catherine Felitz who seeks to avoid her contract, nor is her guardian here suing for any property or money belonging to her. It is the water company that is seeking to avoid it. This it cannot do, unless the contract is absolutely void and incapable of ratification. If it is merely voidable at the election of Catherine Felitz herself, such voidability avails the plaintiff in error nothing. In the case of *McCormick v. Littler*, 85 Ill. 62, it was held that

"Although a person may have been adjudged insane, yet if no conservator has been appointed, and he is in the management of his business, and there is nothing about his appearance to indicate his incapacity to contract, if he purchases an article at a fair and reason-

able price, necessary and useful in his business, the seller having no notice of his being adjudged insane, he will be liable to pay the price he agreed to pay, and it will be error to enjoin a judgment on a note given for the price."

In *Elston v. Jasper*, 45 Tex. 409, it was held that

"The deed of an insane person is not void, but voidable only, but such person whilst actually under legal and subsisting guardianship and in support of the guardian's authority is conclusively presumed incompetent to contract, and his deed as against his guardian is absolutely void.   If, however, as an actual fact the guardianship had been practically abandoned at the time of the sale, and the person who had been insane was, when the deed was executed, of sound mind, the contract, if fair, will be enforced.   The burden of proving the restoration to reason and the termination or practical abandonment of the guardianship of one insane is upon him who seeks the enforcement of a contract against him who pleads insanity."   See, also, *Motley v. Head*, 43 Vt. 633 ; *Searle v. Galbraith*, 73 Ill. 269 ; *McGinnis v. Commonwealth*, 74 Pa. St. 245.

We are of the opinion that the weight of authority is to the effect that the contract is not utterly void. The case of *Redden v. Baker*, 86 Ind. 191, it is true, seems to uphold the contention of the learned counsel for the plaintiff in error, as also that of *Kiehne v. Wessell*, 53 Mo. App. 667.

III.  Lot 5, the property in controversy, was formerly an island in the Kaw river.   In the suit brought by Root and Campbell, in the name of Catherine Felitz against the water company, it was sought to avoid the deeds executed in 1881 and 1882, on the ground that the island was the homestead of Felitz and wife, and that Mrs. Felitz, being insane at the time the deeds were executed, had never consented to its alienation.

The island contained about 10 acres.    The nineteenth finding of the court is as follows :

"That the premises in controversy are inclosed within the incorporated limits of the city of Topeka ; that the said premises have never been surveyed and platted into lots, blocks, streets, and alleys, and the evidence fails to show that the owner or proprietor of said premises ever consented in writing, or otherwise, to the city taking into the city such premises."

If, at the time of the first conveyances to the water company, the land in controversy was included within the limits of an incorporated city, the homestead exemption would extend only over one acre of ground, and the conveyance would be valid as to the remaining nine acres, subject only to the right of the wife to one-half thereof after the death of her husband, in case she survived him.    The trial court found that the whole island was Felitz's homestead.    It is contended that there is nothing in the record showing that the premises could not have been included within the limits of the city without a plat having been made out ; that the fact that the exterior boundaries of the city extended entirely around this tract is sufficient to show that it is within the limits of the city.    The extent of the homestead right of the owner of the land is not to be determined by the question whether the city extends entirely around the land or not, but by the fact that it is or is not a part of the city.    In this case the island, like all the rest of the country round about, was originally without the limits of an incorporate city.    It required affirmative action in the manner authorized by law to make it a part of a city. It appears that it never was platted into lots, and there is nothing to show that the owner ever consented that it should be taken into the city.    The

only evidence offered tending to show that it ever was made a part of the city is an ordinance passed by the city council, fixing the boundaries of the city, but at the time this ordinance was passed the council had no power to make it a part of the city without the consent of the owner, it never having been platted into lots. (*Armstrong v. City of Topeka*, 36 Kan. 432.)

IV. It is claimed that such contracts only as might, at the time they were entered into, have been enforced specifically by either party against the other, can be specifically enforced after performance by one party. It is argued that this was a contract for the services of Root and Campbell, as attorneys ; that their agreement was to exercise their care and skill as lawyers in prosecuting a case in court ; that in the very nature of things the contract could not be specifically enforced against them ; that, inasmuch as Felitz and wife could never have had a decree compelling Root and Campbell to perform their part of the contract, there was a lack of mutuality, and consequently no specific performance can be decreed in favor of the other party. We recognize the soundness of this contention to the extent that a decree requiring specific performance by the attorneys could not, consistently with established principles, be made, or properly enforced, if made. The doctrine that there must be mutuality in the contract, and that it must be capable of enforcement at the suit of either party at the time it is entered into, so broadly contended for by counsel for the plaintiff in error, and stated in equally broad terms in Fry on Specific Performance, § 443, is subject to so many exceptions and such important qualifications that it is doubtful whether a court would ever be warranted in declaring the law so broadly. There are many contracts, originally unilat-

eral, capable of enforcement when accepted. Many
other contracts afford one party a remedy by an action
for the recovery of money, either upon a specific
promise to pay or in an action for damages, while
the other party may be entitled to a specific per-
formance ; still others, where the remedy of one
party before any performance might be very inade-
quate, which are yet, after full performance on one
side, capable of specific enforcement against the
other. For a discussion of the limitations upon the      .
doctrine of mutuality see Pomeroy on the Specific
Performance of Contracts, §§ 167, *et seq.* Upon rea-
son, we are wholly unable to perceive any valid
ground for saying that a contract to convey lands, in
consideration of personal services thereafter to be per-
formed, is less binding and less capable of specific
performance after the services are in fact rendered,
than a contract for the conveyance of land in consid-
eration of the payment of money. Personal services
actually rendered are as good a consideration as money
paid, and where the party seeking enforcement of the
contract is no longer in a position to escape any part
of his obligation, having fully performed it, any want
of mutuality which may have attended the contract
when entered into has passed away, and the power of
the court is ample to compel a conveyance. The
equity of the person who has done all he agreed to is
as complete and full as it could possibly be in any
case. This view is supported by sufficient authority,
as well as by reason. In the case of *Howard v. Throck-
morton,* 48 Cal. 482, it was held that                      .

"Although, when an attorney contracts to perform
legal services for a client in consideration of receiving
a portion of the property about which the litigation
is to be carried on, he cannot maintain an action for
a specific performance while the contract remains un-

performed on his part, yet, if he can show a substantial performance on his part, he is as fully entitled to maintain such action as he would be if the agreement on his part had been for the payment of money." See, also, *Ballard v. Carr*, 48 Cal. 74; *King v. Gildersleeve*, 79 id. 504; *Schroeder v. Gewinder*, 10 Nev. 355; *Perkins v. Hadsell*, 50 Ill. 216.

V. It is contended that this contract is not such an one as a court of equity will enforce; that it was unjust and unreasonable. The defendant offered to show that the services actually performed by Root and Campbell were worth only the sum of $300, while the court finds the value of the property, exclusive of improvements, to have been, in 1886, $15,000, and that the company had expended prior thereto $30,000 in improvements. It is not contended that the contract was void as being champertous. The trial court has found that the contract was fair and reasonable, and in the interest of Hugo Felitz and Catherine Felitz. Can this court say, as a matter of law, that it was not so? It is contended by the defendant in error that Felitz and wife had no other property whatever; no means to employ an attorney; and that the undertaking on Root and Campbell's part to prosecute an action against a strong corporation like the water company to final determination for one-half of the land, taking the risk of receiving nothing in case they failed, and giving to Felitz and wife one-half of the property if they succeeded, was altogether fair and reasonable. Defendant in error contends that the only means Felitz had with which to employ counsel was his interest in this property, the title to which was apparently in the water company. It is said also that the water company is not in a position to test the reasonableness or unreasonableness of the contract. If at the time the contract was made the title to the land was in the

water company, it was of course entirely indifferent
to any contract that might be made between Felitz
and wife and Root and Campbell. If, on the other
hand, Felitz and wife owned the land in fact, it would
be difficult to find any ground on which it could be
said that the water company might deny their right
to make such terms as they saw fit for a sale of one-
half or even of the whole of it. The fact that it might
be easier for the water company to make terms with
Felitz and wife than with another certainly could not
affect the right of that other to obtain an interest in
the property. As there is no contention that the con-
tract is champertous, we are unable to perceive any
ground on which the plaintiff in error can question its
validity. Felitz and wife certainly had as good a right
to contract to pay their attorneys in land for their serv-
ices as to pay them in money. Having contracted to
pay them in land, we perceive no ground on which we
can say that, at the election of the water company,
they shall be required to resort to an action to recover
compensation only for the value of the services actu-
ally performed in money, and to take their chances of
being able to collect even so much. Felitz and wife
are no longer in a position to object to their recovery
of lands the title to which they have conveyed to the
water company, and the water company is in no posi-
tion to require Root to abandon his contract and take
something different from that which it calls for.

VI. Several objections are raised on the introduc-
tion of testimony. The testimony of J. W. Campbell,
taken on a former trial of the case, as taken down by
the official stenographer, and by him transcribed, was
read in evidence, over the objection of the defendant.
It may be conceded that this evidence would not be
admissible without proof that it had been taken down

correctly and correctly transcribed. But the record before us seems to indicate that it was conceded that the testimony offered was the testimony given by Campbell on the former trial, and it was admitted that Campbell was dead. The testimony itself is as to matters concerning which there was sufficient other evidence, and the facts as to which he testified were substantially uncontroverted. The court rejected evidence as to the value of the services of Root and Campbell. There was no error in this, as it was not an issue in the case. Nor do we perceive that the testimony with reference to the contents of the deposition of Catherine Felitz, under the circumstances, worked material prejudice to the defendant.

VII. Complaint is made of the finding by the court that the contract was fair and reasonable, and also that Root and Campbell performed all the conditions of the contract. The fairness and reasonableness of the contract are to be determined by the conditions as they existed at the time it was entered into. The parties doubtless contemplated litigation protracted through all the courts, and that the water company would not yield until it had exhausted every legal obstacle it could interpose. But the company saw fit to make a settlement before the case was even tried in the court in which it was commenced. By that settlement and the dismissal of the case in pursuance of it the litigation was brought to a final termination. There was nothing further that Root and Campbell could do in the prosecution of that or any other case to recover the land for Felitz and wife. They had conveyed it to the water company by a deed that could not be questioned. They had received payment, partly in money and partly by a lease of the land. The value of the services actually performed by them up to the

date of this settlement affords no criterion by which
to measure the reasonableness or unreasonableness of
the contract as originally made.     Up to that date
they had done all they had contracted to do.     They
had convinced the water company that Felitz and
wife had rights in the premises.  The water company
saw fit, not only to concede them a life lease of the
property, worth, as the court finds, from $125 to $150
per year, but also to pay them an additional sum of
$390.   We cannot say that we are convinced that the
contract was unjust or unreasonable, and it is clear to
us that it was fully performed on the part of Root and
Campbell.

VIII.  One further matter requires attention.  Root
had a right to no more than one-half the interest in
the land which in equity and justice belonged to
Felitz and wife.   At the time Felitz and wife con-
veyed the property to the water company in 1881 and
1882, they received from the water company for the
deeds then executed $1,150.   It is inequitable that
they should recover the land and still retain the
money so paid them.   It is also inequitable that Fe-
litz and wife, or Root claiming under them, should
recover lasting and valuable improvements which are
actually beneficial to the property, placed there after
the execution of the deeds with their knowledge.   We
think it equitable that Root should pay to the water
company one-half of the consideration received for
the original deeds, and that, in any division that may
hereafter be made of the premises, the improvements
placed thereon shall be allowed and set off to the
water company, and that Root shall take one-half in
value only of the lands exclusive of such improve-
ments.   The decree entered in the district court will
be modified by requiring the plaintiff, Root, to pay to

the defendant, within 60 days after entry of the corrected judgment, in accordance with the mandate of this court, the sum of $575, and also by providing that the interest conveyed under the deed directed by the decree shall be exclusive of lasting and valuable improvements placed there by the water company subsequent to October 5, 1881. In all other things the judgment will be affirmed.

MARTIN, C. J., concurring.

JOHNSTON, J.: The contract sought to be enforced in this action relates to the homestead of Felitz and wife, and, in order to be valid, must have had the joint consent of both. At the time the contract was made with Root and Campbell, Catherine Felitz had been duly adjudged to be insane, and there had been no adjudication that she had been restored to her right mind. In the act relating to lunatics and habitual drunkards, provision is made for an adjudication respecting the sanity of a person charged to be of unsound mind. It is also provided that, if a person once adjudged to be insane be in fact restored to his right mind, the matter may be inquired into in the same court wherein the adjudication of insanity was made, and, if such person has been restored to his right mind, a decree of restoration may be made and entered. In the same act, it is expressly provided that the contract of a person so adjudged to be insane shall be void. It is well settled that, where contracts of insane persons are declared void by statute, any contract or conveyance made after an adjudication of insanity and before an adjudication of restoration is absolutely void. In Indiana, under a statute similar to ours, it was held by the supreme court of that state that

"The contracts of a person duly adjudged insane

are void. The disability of insanity once established by an adjudication under the statute continues, and is conclusive until the restoration of reason has been determined in the manner prescribed by the statute, and the world must take notice of it. The adjudication has no less force before than after the appointment of a guardian, and is not affected by the discharge of the guardian upon a final settlement of his accounts." ( *Redden v. Baker*, 86 Ind. 191.)

The question has been considered by the courts of Missouri, and the decisions, being based on statutes substantially like ours, are entitled to great weight. In fact it is said that our statute in regard to insane persons was borrowed from Missouri, and the provision in the Missouri statute declaring the contracts of insane persons to be void is the same as that found in section 34 of our statute. In *Rannalls v. Gerner*, 80 Mo. 474, it was held that the deed of an insane person, after an adjudication of lunacy and before restoration, was absolutely void, although made with the assent of his guardian. In *Kiehne v. Wessell*, 53 Mo. App. 667, the effect of an adjudication of lunacy was considered, and in deciding the case the court said:

"The rule at common law is that insanity once proved to have existed is presumed to continue, unless it was accidental or temporary in its nature, as where it was occasioned by violence or disease. . . . The rule under the statute makes this presumption conclusive in a case of an adjudication of lunacy, as was held by the supreme court in *Rannalls v. Gerner*, 80 Mo. 474. In that case, Sherwood, J., cites with approval *Imhoff v. Whitmer*, 31 Pa. St. 243, where it is said that, after inquisition, the fact of lunacy cannot be controverted by evidence of lucid intervals at the moment of contraction. So doing 'would leave the estates of these unfortunate classes about as much exposed as before proceedings had in regard to them. The inquisition and decree, standing of record, was

intended for notice to all the world of the incapacity of the particular party to contract. It is the judgment of the law to this effect, and, as a consequence, his acts in regard to his property are absolutely void while the condition exists.'"

The court proceeded further, and held that, by force of the statutory provisions, an adjudication of lunacy, in the absence of a decree of restoration, is conclusive, and its effect on the contracts of insane persons cannot be overcome by proof that he has had a lucid interval, or that he has become capable of managing his own affairs. If we had no statute expressly declaring a contract invalid when made by one declared to be insane, the contract might be treated as voidable only, and, if made during a lucid interval, would be binding; but under our statute such a contract is a mere nullity, and is wholly incapable of ratification. In no case to which my attention has been called has it been held under a statute like ours that a contract coming within its provisions can be rendered valid by showing that it was entered into during a lucid interval, and the authorities relied upon by the defendant in error, it seems to me, do not support the view contended for nor the conclusion that has been reached.

If the contract in question was valid, Root was still not entitled to the remedy of specific performance. A contract to be specifically enforced by the court must be mutual, and where, at the time it is made, it is incapable of being enforced against one party, that party is equally incapable of enforcing it against the other. It is well settled that contracts calling for the exercise of peculiar skill, care, and attention, or of personal services of a professional and confidential character, or requiring peculiar ability or experience, cannot be specifically enforced. (Fry, Spec. Perf.

§ 440 ; *Publishing Co. v. Telegraph Co.*, 83 Ala. 498 ; *Bickford v. Davis*, 11 Fed. Rep. 549 ; *Ball Club v. Bennett*, 14 id. 257 ; *Duvall v. Myers*, 2 Md. Ch. 401.)

It has been said that

" Specific performance cannot be enforced in this instance for want of mutuality in the contract, so far as the remedy for its enforcement is concerned. The rule is fundamental that a contract will not be specifically enforced unless it is obligatory on both parties, nor unless both parties at the time it is executed have the right to resort to equity for its specific enforcement. And where a contract, when executed, is not specifically enforceable against one of the parties, he cannot, by subsequent performance of those conditions that could not be specifically enforced, put himself in a position to demand specific enforcement against the other party." (*Norris v. Fox*, 45 Fed. Rep. 406, and cases cited.)

Another reason for denying to the defendant in error the remedy he seeks is that the contract is not fair and just, nor supported by any adequate consideration. It is found by the trial court that the company, when it purchased the property in 1881 and 1882, paid the full value of the same to Hugo and Catherine Felitz. Immediate possession was taken of the same, and valuable improvements made, costing at least $37,000. When Root and Campbell entered into the contract with Catherine Felitz they were acquainted with the fact that the company was in the occupancy of the premises, the character of the improvements made thereon, and the purposes for which they were used. At that time the value of the naked land was found to be $15,000. This value and the cost of the improvements bring the amount up to $52,000. The only value given by Root and Campbell for the conveyance of the land in question was the performance of services as attorneys. They filed a petition in court,

and had made some preparation for the trial of the cause. A demurrer had been filed to their petition, but it had not been argued nor disposed of. The action was begun on March 2, 1886, and before any trial or final determination it was dismissed by Catherine Felitz. The company offered, and should have been permitted, to prove that the services rendered to Catherine Felitz were not worth to exceed $300. For this small consideration the plaintiff below asks the court of equity to use its extraordinary powers to take property from the plaintiff below of the value heretofore stated. If the title to the property had remained in Felitz and wife, and the plaintiff below had brought suit against them for the specific performance of the contract, would not the relief asked for have been regarded as inequitable and unjust because of the gross inadequacy of consideration and want of fairness in the contract? The company practically stands in the shoes of Felitz and wife, and is entitled to the same consideration. As specific performance cannot be demanded as a matter of absolute right, but rests to a great extent in the sound judicial discretion of the court, I think that equitable considerations and the circumstances of this case do not justify the enforcement of this remedy. In the view of the majority of the court a strict enforcement of the contract is deemed to be inequitable, and hence the judgment has been materially modified. In my view, the defendant in error is entitled to full compensation for the services performed, and the property should be deemed to have been taken by the company subject to that claim, but under the circumstances he is not entitled to the kind of relief which he asks.

For these reasons I am unable to concur in the conclusion which my associates have reached.