[S. F. No. 727.  Department One.—November 9, 1897.]

## ISAAC L. THURBER, Appellant, v. LOUISA MEVES et al., Respondents.

SPECIFIC PERFORMANCE—MUTUALITY OF REMEDY.—While it is a general rule that mutuality of remedy is essential to authorize the specific performance of a contract, this rule does not require that such mutuality shall exist in all cases at the inception of the transaction.

ID.—CONTRACT FOR PERSONAL SERVICES.—A contract for the conveyance of land, in consideration of personal services to be performed by the vendee, may be specifically enforced at the instance of the latter, after such services have been fully or substantially performed.

ID.—CONTRACT FOR SALE AS SECURITY FOR LOAN—EQUITABLE MORTGAGE—TIME OF PAYMENT.—Where, after the making of a contract for the sale of land, in consideration of personal services to be performed by the vendee, the latter borrows a sum of money from the vendor, to be repaid at a particular date, and to secure the payment thereof agrees that the contract for sale should be held as security for the payment of the loan, and that the right to the conveyance should be dependent upon the payment thereof at the times and in the manner mentioned in the contract of loan, in addition to the other conditions precedent to the conveyance, such second agreement is in the nature of a mere equitable mortgage to secure the payment of the loan, and as its purpose could not be defeated by a mere failure to pay in accordance with its terms, a failure to pay on the day specified would not defeat the vendee's right to a specific performance of the contract for sale.

APPEAL from a judgment of the Superior Court of the County of Santa Cruz and from an order refusing a new trial. J. H. Logan, Judge.

The facts are stated in the opinion of the court.

Julius Lee, for Appellant.

Spalsbury & Burke, for Respondents.

VAN FLEET, J.—January 1, 1883, plaintiff made a contract in writing with Otto Meves, under which Meves entered into the immediate possession of a tract of about forty acres of land belonging to plaintiff, the whole of which available for the purpose Meves was to clear up and cultivate to such fruit trees, grape vines and small fruit plants as should be furnished for the purpose by plaintiff—a certain acreage to be cleared and set out each year during the period of four years; and under which contract Meves was to erect certain fences and open up a certain private way or road; in consideration of which services plaintiff was to convey to Meves on January 1, 1888, the title to the north half of said premises.

On March 10, 1884, Meves borrowed of plaintiff one hundred and fifty dollars, for which he gave his promissory note payable two years from date, with interest at one per cent per month, payable quarterly, and to secure payment of which he gave plaintiff a writing which referred to the first mentioned contract, and provided that said contract should be held as security for payment of the note, and making the right to the conveyance therein provided for, "dependent upon the payment thereof at the times and in the manner mentioned in said promissory note, in addition to the other conditions precedent to said conveyance."

August 14, 1889, Meves died, and March 10, 1890, plaintiff brought this action against these defendants, the heirs of Meves, to quiet title to the north half of the land described in said first-mentioned contract, then held and occupied by defendants, and to acquire possession thereof.

In a cross-complaint the defendants set up the contracts between their ancestor and plaintiff above referred to, alleged a compliance with the terms of the first, except to a partial extent wherein compliance was prevented by certain acts of plaintiff, a tender of payment of said note and willingness and readiness to pay any amount found due thereon, and prayed that plaintiff be

decreed to convey to them the portion of land stipulated in said contract.    The court below found the facts in all material respects as alleged in the cross-complaint, except as to the alleged tender of payment of the note, and made a decree wherein plaintiff is required to convey the land to defendants upon payment by the latter, within sixty days, of the amount of said note and accrued interest.

Plaintiff appeals from the judgment and from an order denying him a new trial.

1. It is first contended that inasmuch as the principal contract counted on by defendants was entered into by plaintiff solely in consideration of the personal services of Meves to be thereafter rendered, which services could not have been compelled by plaintiff, there was presented at the time the contract was entered into such a lack of mutuality as to take the contract out of the class which is susceptible of specific performance by either party.    While it is a general and well-established rule that mutuality of remedy is essential to authorize the specific performance of a contract, this rule does not require that such mutuality shall exist in all cases at the inception of the transaction. Thus in the case of *Hall v. Center*, 40 Cal. 63, 67, speaking of this requirement, it is said by our predecessors: "The rule is one which is frequently adverted to, is well understood, and the reasons upon which it is rested are familiar.    But the exceptions to its operation are numerous.    Lord Redesdale, in *Lawrenson v. Butler*, 1 Schoales & L. 13, limits its application to a case 'where nothing has been done in pursuance of the agreement,' by which it is to be understood that though an agreement may, at the time it was entered into, lack the element of mutuality, and for that reason may not be then such an agreement as equity would enforce, yet if the party seeking relief has subsequently, with the knowledge and the express or tacit consent of the other, placed himself in such a position that it would be a fraud for that other to refuse to perform, equity will relieve."

The principles there announced are sustained in the later cases of *Ballard v. Carr*, 48 Cal. 74, and *Howard v. Throckmorton*, 48 Cal. 489.    And, adverting to this element of mutuality and the question as to the time when it must exist, it is said by Mr. Waterman: "The rule as to the time is to be taken with this quali-

fication, that notwithstanding the contract when it is entered into be incapable of specific performance by one of the parties, or, being enforced against him, yet if the obligation to perform be mutual and the obstacle to performance be subsequently overcome, a decree may then be rendered. If the plaintiff has performed his part of the agreement, specific performance may be decreed, although the contract, so far as concerned performance by the plaintiff, was originally beyond the jurisdiction of the court": Waterman on Specific Performance, sec. 199. The authorities cited by appellant are not at variance with this qualification of the rule.

And while an obligation to perform personal services is one of which specific enforcement may not be had (Civ. Code, sec. 3390), this rule has not the effect to defeat the right to have the specific benefit of an enforceable obligation entered into in consideration of personal services, where such services have been fully or substantially performed. (*Ballard v. Carr, supra; Howard v. Throckmorton, supra; King v. Gildersleeve,* 79 Cal. 504, 510.) In *Howard v. Throckmorton, supra,* which, like *Ballard v. Carr, supra,* was an action to enforce an obligation to convey land in consideration of personal services as an attorney, it is said: "While it is true as a general proposition that a party who has contracted to perform services of the character mentioned in the contract in this case cannot maintain an action for specific performance while the contract remains unperformed on his part, yet, if he can show a substantial performance on his part, he is as fully entitled to maintain such action as he would be if the agreement on his part had been for the payment of money."

It is claimed that the court did not find that Meves had fully performed his part of the contract. But we think that the clear effect of the finding is, that the contract was in its substance and value, so far as affected plaintiff's rights thereunder, fully performed by Meves. The fact that a portion of the north half which was to go to Meves was not entirely cleared and planted, whether the failure as impliedly found by the court arose wholly through plaintiff's acts or not, did not materially affect any substantial right of plaintiff. It is found that the

latter's half was, so far as available for the purpose, fully cleared, cultivated, and set out.

2. It is contended, however, that by the terms of the second agreement made to secure the payment of the note the time of payment was made of the essence of the right to a conveyance; and that the note not having been paid, or payment tendered according to its terms, the right to such conveyance was thereby terminated, irrespective of defendant's rights under the first contract if standing alone. But we cannot ascribe such effect to that paper. This latter contract was entirely collateral to the first, and its relation thereto merely incidental—the essential purpose being to accomplish a wholly different object. It was in the nature of an equitable mortgage, the real purpose of which was to secure the payment of the note. Since this purpose could not be defeated by a mere failure to pay in accordance with its terms, time was not of the substance of the contract, and where, as here, the lapse is susceptible of exact compensation in money damages—in the way of interest—equity will not permit such default to defeat a right acquired under the first contract, to which the second is merely collateral. The rule in this respect is thus stated in Fry on Specific Performance, section 617: "Where that on the performance of which by the plaintiff the defendant relies is in its nature a collateral and separate contract, or is part of or referable to such a contract, though between the same parties, and entered into at the same time and having relation to the same subject matter as the contract which the party seeks to enforce, the court will not consider the default by the plaintiff in respect of the one contract as any bar to the specific performance of the other, though such default may give him a cross-right of action or suit."

3. The objection that findings 1 and 3 are contrary to the evidence is not tenable. Finding 1, if material, should not be considered as finding that plaintiff was not the holder of the legal title to the land; while finding 3 is in effect but a declaration that defendants are the owners of the equitable title.

4. We see nothing substantially wrong in the form of the judgment. It should, perhaps, not have declared the defendants named therein to be the owners in fee simple of the land, but should have declared their equity and directed the plaintiff,

upon payment of the amount due under the agreement within a specified time, to convey to them the legal title. But we are unable to see why the judgment as entered does not accomplish the same result. The plaintiff, however, was entitled, as conceded by defendants, to interest on the principal amount of the note from March 10, 1884, less the amount of interest paid, and the judgment as entered is erroneous in this respect. This was a mere clerical error, however, which could and should have been corrected in the court below on motion, and did not necessitate an appeal; and appellant is not therefore entitled to costs of the appeal.

The court below is directed to so modify its judgment as to correct this error, and as so modified the judgment will stand affirmed, with costs of the appeal to respondents.

Harrison, J., and Garoutte, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank, and filed the following opinion on the 9th of December, 1897:

BEATTY, C. J.—On the doctrine of equitable conversion, and the theory that defendants are equitable owners of the fee in the land subject only to a lien for the money due plaintiff, I think it was error not to decree a foreclosure of the lien. The pleadings would have warranted such a decree and equity demanded it. As it is, plaintiff is turned over to another action for the relief he should have had in this action with costs.

For this reason I think the case should have been ordered to a rehearing.